Florence Alice **PAQUET**, Appellant,

v.

**UNITED STATES of America,**
**Appellee.**

**No. 14915.**

United States Court of Appeals
Ninth Circuit.

July 10, 1956.

Rehearing Denied Aug. 23, 1956.

**204**

O. P. Soares, Honolulu, Hawaii, for appellant.

Louis B. Blissard, U. S. Atty., Edgar D. Crumpacker, Charles B. Dwight, III, Asst. U. S. Attys., Honolulu, Hawaii, for appellee.

Before DENMAN, Chief Judge, CHAMBERS, Circuit Judge, and TOLIN, District Judge.

DENMAN, Chief Judge.

■ Florence Alice Paquet appeals from her convictions in the United States District Court for the District of Hawaii of making false statements in applying for a United States passport,[1] unlawfully using such a passport secured by a false statement,[2] and falsely representing herself on two different occasions to be a United States citizen.[3] She contends that her convictions were based on a confession which was coerced from her, and that the confession was improperly admitted into evidence without corroboration. Since the prison sentences on the four counts are concurrent and only the first and second had added fines of $250.00 in each, it is sufficient that we hold that the first two sentences are valid. Cohen v. United States, 9 Cir., 1953, 201 F.2d 386, 389.

I. *Appellant's Confession of Violating both the First and Second Counts was not Shown to be Coerced.*

■ Appellant contends that her convictions for fraudulently obtaining and then unlawfully using the passport were based on a confession which was coerced from her by use of psychological pressure. She claims she did not have that "mental freedom" which the Supreme Court has said a defendant

---

1. 18 U.S.C. § 1542 provides punishment for:
   "Whoever willfully and knowingly makes any false statement in an application for passport with intent to induce or secure the issuance of a passport under the authority of the United States, either for his own use or the use of another, contrary to the laws regulating the issuance of passports or the rules prescribed pursuant to such laws".

2. 18 U.S.C. § 1542 also penalizes:
   "Whoever willfully and knowingly uses * * * any passport the issue of which was secured in any way by reason of any false statement * * *."

3. 18 U.S.C. § 911 provides:
   "Whoever falsely and willfully represents himself to be a citizen of the United States shall be fined not more than $1,-000 or imprisoned not more than three years, or both."

must possess to make a confession admissible.[4]

The record fails to support such an assertion. The Immigration and Naturalization Service Inspector who obtained her confession testified that after questioning appellant at her home he asked her to accompany him to the Immigration Office to make a formal statement which she agreed to do. From that point on he considered her in his custody. Upon arrival at the office, appellant was advised of her Constitutional rights, and she was asked if she was acting voluntarily. She replied that she was, and a statement was taken from her. The investigator testified that he had neither promised appellant immunity nor made use of threats or force. He denied telling her that her crime was worse than murder in that it was subject to two punishments—a prison term and deportation. He stated that he had not discussed the enormity of the offense in any respect, but that he "possibly did mention that if she was an alien she might be subject to deportation." The warrant for appellant's arrest was served shortly after she had signed her statement.

■ The mere fact the confession was made while in the custody of the Bureau of Immigration and Naturalization investigator does not render it inadmissible.[5] The record shows no use of threats or psychological pressure. As was said in United States v. Mitchell, 1944, 322 U.S. 65, 70, 64 S.Ct. 896, 898, 88 L.Ed. 1140:

> "Here there was no disclosure induced by illegal detention * * * but instead * * * the prompt acknowledgement by an accused of [her] guilt, and the subsequent rue-

ing apparently of such spontaneous cooperation and concession of guilt."

II. *Appellant's Admissions that she made False Statement to Secure her Passport are Corroborated.*

Her confession on this count was as follows: She had altered her cousin's certificate of baptism from the Church of St. Monica in Barre, Vermont, to describe herself. She had presented this document to those in charge of issuing passports in Honolulu and represented herself in written applications for a passport as a United States citizen by virtue of her birth in Vermont. She stated this and also stated that in fact she was born in Canada and had never become a United States citizen. She had obtained a United States passport and had used it to travel to and from Hawaii to Guam.

The Government introduced the following documents to corroborate the confession of this crime of making false statements to passport authorities, namely, two duplicate original copies or appellant's application for a passport, Exhibits 2 and 3, in which she stated she was born in Barre, Vermont, her American passport, Exhibit 4, and her Canadian passport, Exhibit 5, which states that she was born in Inverness, Canada.

■ Appellant argues that each of these documents is inadmissible, and consequently her confession was uncorroborated. She contends first that the two duplicate original copies of her application for a United States passport were erroneously admitted since they were not accompanied by a certificate that "the officer from whose custody they purport to come, has the custody thereof." Such a certificate is required by F.R.C.P. 44(a), 28 U.S.C.,[6] which is

---

4. She relies on Ashcraft v. Tennessee, 1943, 322 U.S. 143, 64 S.Ct. 921, 88 L. Ed. 1192; Lyons v. Oklahoma, 1944, 322 U.S. 596, 64 S.Ct. 1208, 88 L.Ed. 1481. Cf. Ziang Sung Wan v. United States, 1924, 266 U.S. 1, 45 S.Ct. 1, 69 L.Ed. 131.

5. McNabb v. United States, 1943, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819; United

States v. Mitchell, 1944, 322 U.S. 65, 64 S.Ct. 896, 88 L.Ed. 1140.

6. This rule provides: "An official record or an entry therein, when admissible for any purpose, may be evidenced by an official publication thereof or by a copy attested by the officer having the legal custody of the record, or by his deputy, and accompanied with a certificate that such officer has the custody."

made applicable to criminal cases by F.R.Crim.P. 27, 18 U.S.C.[7]

However, F.R.C.P. 44(c) provides:

"This rule does not prevent the proof of official records or of entry or of lack of entry therein by any method authorized by any applicable statute or by the rules of evidence at common law."

Both of these documents were admissible under such other methods. Exhibit No. 2 is a photographic copy of appellant's application with a certificate of baptism from the Church of St. Monica, Barre, Vermont, attached. Bound to this exhibit is an authentication by the Authentication Officer of the Department of State which certifies that "the documents hereunto annexed are true copies from the files of this Department." Under 28 U.S.C. § 1733(b) [8] such a copy of a document on file with a department is admissible if "properly authenticated". The Secretary of State is given power to make regulations concerning the records of his department and the conduct of its officers under 5 U.S.C.A. § 22.[9] A regulation providing for the authentication of documents by the Authentication Officer of the Department of State in exactly the terms found on Exhibit No. 2 is contained in 22 C.F.R. § 1.1.[10] Such an authentication is "proper" and this exhibit was admissible under Section 1733(b).

Exhibit No. 3 is one of the applications for a passport filled out by appellant. It was admissible "by the rules of evidence at common law." [11] It was identified by the Deputy Clerk of the United States District Court for the District of Hawaii before whom appellant took the required oath of allegiance and signed the application and by the Hawaiian Passport Administrator to whom appellant presented it to obtain a passport. Both linked the document with appellant, and there is no question that it is relevant and material.

Appellant next argues that her American and Canadian passports should have been excluded by the District Court. She asserts that they "were taken from * * * [her] * * * while she was unlawfully in custody under circumstances which were in violation of her rights under the Constitution to be secure in the possession of her papers and against self crimination." She claims that an investigator of the Bureau of Immigration and Naturalization while questioning her at her home in Honolulu obtained the two passports "under pressure".

7. F.R.Crim.P. 27 provides: "An official record or an entry therein or the lack of such a record or entry may be proved in the same manner as in civil actions."

8. Section 1733(b) provides:
"Properly authenticated copies or transcripts of any books, records, papers or documents of any department or agency of the United States shall be admitted in evidence equally with the originals thereof."

9. Section 22 provides:
"The head of each department is authorized to prescribe regulations, not inconsistent with law, for the government of his department, the conduct of its officers and clerks, the distribution and performance of its business, and the custody, use, and preservation of the records, papers, and property appertaining to it."

10. 22 C.F.R. § 1.1 provides:
"An officer or employee of the Department of State designated as Authentica-

tion Officer or as an Acting Authentication Officer of said Department may, and he is hereby authorized to, sign and issue certificates of authentication under the seal of the Department of State for and in the name of the Secretary of State or Acting Secretary of State. The form of authentication shall be as follows:
In testimony whereof, .............., Secretary of State, have hereunto caused the seal of the Department of State to be affixed and my name subscribed by the Authentication Officer of the said Department, at the City of Washington, in the District of Columbia, This ...... day of ............, 19.....
".................... 
"Secretary of State
"By........................
"Authentication Officer
"Department of State"

11. Wigmore, Evidence, §§ 666, 2131, 2148–2154 (3d ed., 1940).

The record does not bear out the contention that the passports were obtained in such a way as to violate the Fourth Amendment.[12] The investigator who obtained the passports described the interview at appellant's home where he obtained the *American* passport. He asked appellant whether she had an American passport. She replied that she did not. He stated he had been told she had presented one at the airport upon her arrival from Guam that morning. She said she had destroyed it en route from the airport. He asked her when and where she destroyed it, in his words, "I first asked her as to when and where, *pressed the issue as to when, where * * *.*" [Emphasis added.] Without answering his questions, appellant walked to her handbag, took out the passport, and gave it to him. He denied telling her that "it would be tough for her if she couldn't produce it." The investigator testified that the day after his visit to appellant's home she gave him her *Canadian* passport. She was under arrest at the time.

Undoubtedly a situation could arise where, because of coercion, a person became the unwilling instrument of an illegal search and seizure of his own property by a law enforcement officer.[13] However, appellant has failed to show that such a thing occurred. The investigator's statement that he "pressed the issue" as to when and where she destroyed her American passport does not establish this. As far as the record indicates, appellant was free to refuse to answer these questions and keep the whereabouts of her passport secret.

■ The record, as described above, also fails to establish an infringement of the Fifth Amendment privilege against self-incrimination. That privilege is expressed in the Bill of Rights as follows:

> "No person * * * shall be *compelled* in any criminal case to be a witness against himself * * *." [Emphasis added.] [14]

Appellant has failed to show that she was "compelled" to hand over her passport. Those who would extend the privilege against self-incrimination from the courtroom to the police station place reliance on the compulsion to make statements to which a person is necessarily subjected while in police custody.[15] Even assuming the privilege is applicable beyond the courtroom,[16] there is no reason to extend it to cases where one being questioned in her own living room voluntarily hands over documents.

■ Appellant contends that, absent the confession, these documents do not establish the corpus delicti, and that only by such proof can the confession be corroborated. We do not agree. The extent of corroboration necessary has been recently discussed by the Supreme Court in Opper v. United States, 1954, 348 U.S. 84, 93, 75 S.Ct. 158, 164, 99 L.Ed. 101, as follows:

12. "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." United States Const. Amend. IV.

13. Cf. Ray v. United States, 5 Cir., 1936, 84 F.2d 654; United States v. Abrams, D.C.D.Vt.1916, 230 F. 313.

14. United States Const. Amend. V.

15. See Bram v. United States, 1897, 163 U.S. 532, 18 S.Ct. 183, 42 L.Ed. 568;

McNabb v. United States, 1942, 318 U.S. 332, 347, 63 S.Ct. 608, 87 L.Ed. 819, Reed, J., dissenting; Rochin v. California, 1952, 342 U.S. 165, 174, 177, 72 S.Ct. 205, 96 L.Ed. 183, Black and Douglas, JJ., concurring; Bullock v. United States, 1941, 74 App.D.C. 220, 122 F.2d 213, 215; Note, The Privilege Against Self-Incrimination: Does It Exist in the Police Station? 5 Stanford L.Rev. 459 (1953).

16. Cf. 3 Wigmore, Evidence § 821 n. 2, § 823 n. 5, § 832 n. 1, § 865 n. 12, § 898 n. 1 (3d ed., 1940); Wood v. United States, 1942, 75 U.S.App.D.C. 274, 128 F.2d 265, 270, 141 A.L.R. 1318.

**208**

"* * * we think the better rule to be that the corroborative evidence need not be sufficient, independent of the statements, to establish the *corpus delicti*. It is necessary, therefore, to require the Government to introduce substantial independent evidence which would tend to establish the trustworthiness of the statement. Thus, the independent evidence serves a dual function. It tends to make the admission reliable, thus corroborating it while also establishing independently the other necessary elements of the offense. * * * It is sufficient if the corroboration supports the essential facts admitted sufficiently to justify a jury inference of their truth. Those facts plus the other evidence besides the admission must, of course, be sufficient to find guilt beyond a reasonable doubt."

Here the corroboration established appellant had applied for a United States passport stating she was born in Barre, Vermont and thereby representing that she was a United States citizen. Her Canadian passport stated that she was born in Inverness, Canada. This evidence "supports the essential facts admitted sufficiently to justify a jury inference of their truth." Certainly a jury could infer that the Canadian passport stated her actual birthplace, and that her representation as to her birthplace in Vermont was false.

▇▇▇ As to the second offense of willfully using a passport secured by her false statements, her confession is corroborated by the testimony of James P. Keane, an inspector of the United States Immigration Service at Hawaii, to whom she there presented the passport to Guam.

The confession was not shown to be coerced, and it was sufficiently corroborated. The judgments on the first and second counts are affirmed.