Jack A. LEMON and Martin de Bruin, Appellants,

v.

UNITED STATES of America, Appellee.

No. 16468.

United States Court of Appeals Ninth Circuit.

March 30, 1960.

Affirmed.

Hyman M. Greenstein, Greenstein & Franklin, Honolulu, Hawaii, for appellants.

Louis B. Blissard, U. S. Atty., Harry W. Dudley, Asst. U. S. Atty., Honolulu, Hawaii, for appellee.

Before MATHEWS, HAMLEY and MERRILL, Circuit Judges.

HAMLEY, Circuit Judge.

Jack A. Lemon and Martin de Bruin were jointly tried and convicted on all counts of a five-count indictment charging use of the mails to defraud, in violation of 18 U.S.C.A. § 1341.[1] The activity in connection with which they were convicted involved the sale of booklets entitling the purchaser to receive certain articles and services from Honolulu merchants. The sales were made over the telephone, and the orders were filled and payments obtained by means of C.O.D. mailings.

Appealing to this court, defendants contend that the evidence is insufficient to support the jury verdict. They concede that the mails were used in filling the orders and obtaining payments. Ap-

1. Section 1341 provides:
"Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, * * * for the purpose of executing such scheme or artifice or attempting to do so, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Post Office Department, * * * shall be fined not more than $1,000 or imprisoned not more than five years, or both."

pellants assert, however, that the evidence was insufficient to warrant a finding that there was involved any scheme to defraud residents of Honolulu, or to obtain money therefrom by means of false or fraudulent pretenses, representations, or promises, as charged in the indictment.

■ All counts of the indictment charged the same scheme, but each named a different person as addressee of a booklet mailed C.O.D. Each appellant was sentenced on each count to imprisonment for three months and to pay a fine of five hundred dollars. The sentences on all counts were concurrent, and the judgment provided that payment of the fine on count I would constitute payment on each of the remaining counts. By necessary inference payment of the fine on any count would thus constitute payment on each of the other counts. It follows that if the evidence is sufficient to sustain the conviction on any count the judgment is to be affirmed.

Stein v. United States, 9 Cir., 263 F.2d 579.

Consistent with the factual allegations contained in count III, substantial evidence was received tending to show as follows: Appellants contacted a number of Honolulu merchants and obtained contracts under which each merchant agreed to honor service cards or coupons reciting that specified articles or services were available from such merchant without charge, or at a discount, with or without stated conditions of the kind described below. Service cards and coupon books, the latter denominated "Honolulu Customers Checkbook," describing what articles and services were available from which merchants were then printed.

■ Residents of the City and County of Honolulu were then called on the telephone, a number of women being employed to place these calls. In making these calls the women were directed to, and for the most part did, follow written instructions worded substantially as quoted in the margin.[2] Among those

2. "Hello, is this telephone No...........? This is Honolulu Customers Checkbook calling and I have some wonderful news for you. If you can answer the following question correctly you will have the opportunity to receive a customers checkbook worth over $50.00 in useful car services, entertainment tickets and free gifts.

"Are you ready for your question?

"1. What is the second largest town on the Island of Oahu? Answer. Wahiawa or Kailua.

"I'm sorry, the answer is the town of Wahiawa or Kailua, but since you tried so hard we will give you another question.

"2. In which hand does the statute of liberty hold the torch? Answer. Right.

"Well congratulations. Now you will receive the following:

  1 Free pizza from Larry Vincentes
  2 Free dance lessons from Arthur Murrays
    Free boat ride
  1 Year's subscription to Sports Extra magazine
    Free ticket to wrestling matches
    Free T.V. service call
    Free 5 x 7 silvertone photograph of your child
  6 Lines of Bowling

    Free slenderizing treatment and professional figure analysis from Stauffer System
    Free butter dish or mustard and catsup set
    And for your car you will receive:
  2 Free grease jobs
    Free car wash
    Free flat tire repair
    Free battery charge
    Free brake adjustment
    Free tire rotation
    Free wheel bearing packed
    Free radiator flush
    Your points cleaned and set and many other valuable services.

"Now, these are only a few of the many wonderful values offered by 20 of your local businessmen who have gone to a great expense in order to acquaint you with their places of business. The only cost to you is $4.75 for printing and handling cost of your customers checkbook. In all you do receive over $50.00 in useful values. These books are limited to one per family, and it will be delivered by your mail man C.O.D. Do I have the right address Mrs. ......................
           (Read name and address out of phone book)

called on the telephone was J. Nozawa, named in count III as an addressee of matter mailed in execution of appellant's plan, and who appeared as a witness.[3]

This witness testified in part:

"Q. Would you please tell us briefly, in your own words, the nature of the call? A. Yes, I received a telephone call from a woman who identified herself as from the Customers Checkbook. And she told me it was a contest and that if I could answer the following question, I would receive some valuable merchandise. The question asked was: What is the second largest city on Oahu, to which I answered Wahiawa. And she said 'Congratulations. You have—this is some of the merchandise you have won.' Oh, she mentioned some tickets to the wrestling matches, boxing matches, a meal at Vincente's and some oil and grease jobs and minor brake adjustments, car wash for Ray's Shell Service. Then she concluded her conversation by saying, 'You have won over $60 worth of valuable merchandise for a cost of $4.75,' which was to cover postage and the cost of printing the checkbooks, to which I agreed."

Nancy Nozawa further testified that she agreed over the telephone to pay the $4.75 charge and later paid a C.O.D. charge of $4.90 when the booklet was delivered. This booklet contained coupons entitling her to all of the articles and services which had been mentioned over the telephone. However, conditions which were not mentioned over the telephone were attached to some such items. Certain other items, as described below, would have been available to her free of charge without the need of a coupon.

Nancy Nozawa testified that the telephone caller led her to believe that there were many other merchandise gifts which she had won in addition to those named over the telephone. Indicating the effect which this telephone call had upon her, this witness testified:

"Q. Did she say to you, 'Now, your Checkbook will be delivered to you next week,' or something to that effect? A. Well, by that time I was so happy and excited, I don't remember if she said that or not. * * * Q. Did she say, 'Thank you'? A. I was excited. I don't remember whether she said 'Good bye' or 'Thank you.' Q. Probably she did say 'Thank you' or 'Good bye'? A. I can't remember, because I was too excited."

The envelope which Nancy Nozawa received through the mail and for which she paid a C.O.D. charge of $4.90 contained two pieces of printed matter. One was a "Honolulu Customers Check Book." It contained twenty-nine coupons, each referring to some article or service to be obtained from some Honolulu merchant. The other piece of printed matter was labeled "Passenger Car Service Card."

The two pieces of printed matter entitled the holder to certain articles and services from indicated merchants without charge and with no conditions of consequence attached, as listed in the margin.[4] No evidence was offered as to

---

"Now, your checkbook will be delivered to you next week. You understand when your mail man brings your customers checkbook you pay him only $4.75. The businessmen want and respect your patronage and we wish you a good time, so take advantage of these wonderful offers in your Honolulu customers checkbook.
    Thank you and goodbye.
Mention only the offers above. No refund.

The above services are offered for $4.75. Do not tell the people they win the services."

3. The witness gave her name as Nancy Nozawa rather than J. Nozawa. She testified, however, that she had received the piece of mail matter addressed "J. Nozawa." The jury was accordingly entitled to find that Nancy Nozawa and J. Nozawa were one and the same person.

4. One medium pizza, one general admission to a wrestling match, $7.00 in Stauf-

the total value of these items. However, each such article or service has a normal price range which is commonly known. The jury could have found that the total value of the items listed in footnote 4 could not have exceeded thirty or thirty-five dollars, without regard to the factors mentioned below.

The coupon representing seven dollars in Stauffer System treatments was actually worth only $3.50, since one $3.50 treatment could have been obtained without a coupon. Likewise, one of the two Arthur Murray dance lessons referred to in the booklet could have been obtained without any coupon. The two pieces of printed matter also refer to a number of other items which were available only by making another purchase, or as a discount, or upon some other condition not named during the telephone conversation.[5]

The elements necessary for a conviction under 18 U.S.C.A. § 1341 are (1) the formation of a scheme with an intent to defraud, and (2) use of the mails in furtherance of that scheme. No actual misrepresentation of fact is necessary to make the crime complete. Gregory v. United States, 5 Cir., 253 F.2d 104, 109.

Appellants argue that the technique used in soliciting the order, whereby Nancy Nozawa was congratulated upon answering a simple question and told that she had thereby won certain merchandise, did not involve false or fraudulent pretenses, representations, or promises within the meaning of § 1341. This technique, appellants contend, could not have deceived any except the most gullible.

It is immaterial whether only the most gullible would have been deceived by this technique. Section 1341 protects the naive as well as the wordly-wise, and the former are more in need of protection than the latter. United States v. Sylvanus, 7 Cir., 192 F.2d 96, 105. As a matter of fact, "* * * the lack of guile on the part of those solicited may itself point with persuasion to the fraudulent character of the artifice." Norman v. United States, 6 Cir., 100 F.2d 905, 907.

The jury could find that appellants intended to deceive by the described ruse, else they would not have used it. The evidence indicated that they were successful in doing so, though the government was not required to prove that the scheme succeeded. Kreuter v. United States, 5 Cir., 218 F.2d 532.

In addition to the foregoing evidence which indicates formation of a scheme intended to deceive, two actual misrepresentations of fact were made. One of these was the representation that the $4.75 or $4.90 charged for the coupon book was only to defray expenses of "printing and handling." Actually the major part of this amount went directly to appellants. Had this statement not been made, the person solicited would not

fer System treatments, six lines of bowling open play, two Arthur Murray dance lessons or $15.00 credit on an original course, one TV service call ($5.00 value), one 5 x 7 silvertone child's portrait, one ten-minute boat ride, one butter dish or a free set of mustard and ketchup dispensers, a one-minute voice recording, one year subscription to Sports Extra, two Shell lubrications, one car wash, one tire repair, one battery charge, one air cleaner service, one brake inspection, one brake adjustment, one tire rotation, one wheel-bearing packed, one service of cleaning and setting points, and one radiator flush.

5. These were as follows: Two theatre tickets, each available only in connection with the purchase of one adult ticket, one ringside ticket to a wrestling match with the purchase of one reserved seat, one Benrus watch with the purchase of a Benrus watch of equal value, one lubrication with the purchase of an oil change, 150 gallons of gasoline with the purchase of a used car over $1,000, 100 gallons of gasoline with the purchase of a used car between $600 and $1,000, 50 gallons of gasoline with the purchase of a used car under $600, a 50¢ discount on a $1.50 car wash, two 25¢ discounts on $1.50 car washes, $1 credit on any apparel purchase over $10, a 25% discount on "boat rides," $20 discount on the purchase of five tires, and a 10% discount on a new battery.

have been thrown off guard concerning the solicitor's interest in obtaining an order, and in all probability would have been more wary.

Then there was the studied withholding of information concerning conditions attached to many of the coupons. The difficulty here is not that the articles and services which could be obtained were worth less than the price paid. Rather, it is that the full value represented could not be obtained except upon unmentioned terms and conditions which were unfavorable to the person solicited.

■ This is not to say that it was necessarily the duty of the solicitor to spell out each and every term and condition attached to the coupons. Honest solicitation, however, required that the promise of free merchandise be tempered with some reasonable mention of the strings attached. See, also, United States v. Sylvanus, supra, 192 F.2d at page 105.[6]

■ The evidence tending to show the combination of deceits described above is ample to sustain the verdict on count III.

The judgments are affirmed.

MATHEWS, Circuit Judge (concurring in the result).

On October 3, 1958, in the United States District Court for the District of Hawaii, appellants (Jack A. Lemon and Martin de Bruin)[1] were indicted for violating 18 U.S.C.A. § 1341. The indictment was in five counts.

Count 1 alleged, in substance, that, having devised and intending to devise a scheme and artifice to defraud and for obtaining money and property by means of false and fraudulent pretenses, representations and promises, appellants, for the purpose of executing said scheme and artifice, and attempting to do so, did, on or about June 10, 1958, in the City and County of Honolulu, in the District of Hawaii, place in an authorized depository for mail matter a letter addressed to Clayton C. Holloway, to be sent and delivered by the Post Office Department.

Counts 2–5 were similar to count 1, except that, instead of referring to a letter placed in an authorized depository on or about June 10, 1958, addressed to Clayton C. Holloway, count 2 referred to a letter placed in an authorized depository on or about June 14, 1958, addressed to Mrs. William K. Kahookele; count 3 referred to a letter placed in an authorized depository on or about June 16, 1958, addressed to J. Nozawa; count 4 referred to a letter placed in an authorized depository on or about June 16, 1958, addressed to Margaret Sorrell; and count 5 referred to a letter placed in an authorized depository on or about June 17, 1958, addressed to Robert Enomoto.

Appellants were arraigned, pleaded not guilty, had a jury trial and were found guilty on each count of the indictment. Thereupon, two judgments of conviction were entered—one against appellant Lemon and one against appellant de Bruin. Thereby each appellant was sentenced on each count to be imprisoned for three months and to pay a fine of $500.[2] This appeal is from the judgments.

The question presented is whether the evidence was sufficient to sustain the

6. There also appears to have been a deception practiced upon the merchants, since it was represented to them that the coupon books would be advertised in newspapers and over television, and orders would be solicited door to door, no mention being made of a telephone campaign. But since the indictments charge that the persons defrauded were those who were solicited over the telephone, we do not predicate our holding as to the sufficiency of the evidence upon this deception of the merchants.

1. Appellants sometimes called themselves Honolulu Customers Check Book.

2. Each judgment provided that the sentences of imprisonment on counts 1–5 should run concurrently, and that payment of the fine of $500 on count 1 would constitute payment of the fine on each of the remaining counts. Thus the sentences on counts 2–5 added nothing to the sentences on count 1.

conviction of appellants or either of them on counts 1–5 or any of them. There was substantial evidence to the following effect:

On or before June 10, 1958, appellants devised a scheme for obtaining money from persons hereafter called the persons from whom appellants schemed to obtain money. There were more than 4,000 such persons.

It was part of the scheme that appellants, acting by and through their agents and employees, would make to each of the persons from whom appellants schemed to obtain money pretenses, representations and promises [3] to the effect (1) that appellants would send to each such person by mail, C.O.D., a check book [4] worth over $50 in car services, entertainment tickets and free gifts; (2) that such check book would be delivered to such person upon payment of $4.75 to the mail carrier; [5] and (3) that each person to whom such check book was delivered would receive, without further cost or obligation, goods and services having a value of more than $50.

It was part of the scheme that these pretenses, representations and promises would be false; that, after making them, appellants would send by mail, C.O.D., to each of the persons from whom they schemed to obtain money a sealed envelope to be delivered to such person upon payment of $4.75 to the mail carrier; that, instead of the promised check book, such envelope would contain a booklet [6] consisting of coupons purporting to be "redeemable" in goods or services by persons and firms whose names were printed thereon; and that such booklet would have very little, if any, value.

It was part of the scheme that, relying on the false pretenses, representations and promises mentioned above, each of the persons from whom appellants schemed to obtain money would believe that the sealed envelope sent by appellants contained the promised check book and, so believing, would pay $4.75 to the mail carrier, whereupon the envelope containing a booklet of coupons, but no check book, would be delivered to such person, and the $4.75 would be sent to and received by appellants.

Obviously, the scheme was one for obtaining money by means of false pretenses, representations and promises.

Having devised the scheme, appellants, for the purpose of executing it, did, on or about June 10, 1958, in the City and County of Honolulu, place in an authorized depository for mail matter a letter addressed to Clayton C. Holloway, to be sent and delivered by the Post Office Department.

I conclude that the evidence was sufficient to sustain the conviction of each appellant on count 1. Since the sentences on counts 2–5 added nothing to the sentences on count 1,[7] it is unnecessary to decide whether the evidence was sufficient to sustain the conviction of appellants or either of them on counts 2–5 or any of them.[8]

For the reasons I have indicated, the judgments should be affirmed.

---

3. It was part of the scheme that these pretenses, representations and promises would be made by telephone.

4. It was part of the scheme that the promised check book would be described and referred to by appellants as a "Honolulu customers check book."

5. It was part of the scheme that appellants would pretend that the $4.75 was to cover the cost of "printing and handling" the promised check book.

6. It was part of the scheme that each booklet would be labeled "Honolulu Customers Check Book," but would not be a check book or anything resembling a check book.

7. See footnote 2.

8. Haid v. United States, 9 Cir., 157 F.2d 630; Jaynes v. United States, 9 Cir., 224 F.2d 367, 15 Alaska 621; Toliver v. United States, 9 Cir., 224 F.2d 742; Paquet v. United States, 9 Cir., 236 F.2d 203; Simpson v. United States, 9 Cir., 241 F.2d 222; Chin Bick Wah v. United States, 9 Cir., 245 F.2d 274; Donaldson v. United States, 9 Cir., 248 F.2d 364; Robinson v. United States, 9 Cir., 262 F.2d 645; Stein v. United States, 9 Cir., 263 F.2d 579; Elkins v. United States, 9 Cir., 266 F.2d 588.