**UNITED STATES of America,**
**Plaintiff-Appellant,**

v.

**Daniel P. UNGER, Defendant-Appellee.**

**No. 13336.**

United States Court of Appeals
Seventh Circuit.

Sept. 21, 1961.

Rehearing Denied Nov. 27, 1961.

James P. O'Brien, U. S. Atty., Robert S. Atkins, and John Peter Lulinski, Asst. U. S. Attys., Chicago, Ill., of counsel, for appellant.

Maurice J. Walsh, Chicago, Ill., for appellee.

Before HASTINGS, Chief Judge, and SCHNACKENBERG and CASTLE, Circuit Judges.

SCHNACKENBERG, Circuit Judge.

Daniel P. Unger was named as defendant in a ten count indictment filed in the district court on January 23, 1959, charging use of the mails to defraud, in violation of Section 1341 of Title 18, United States Code.[1] In some of the counts M. Edward Ushkow was also named as a defendant.

On motion of Unger to dismiss the indictment for insufficiency, the district court, adopting an opinion explaining its 1958 dismissal of a prior indictment

1. 18 U.S.C.A. § 1341.

against Unger, considered the pending motion to dismiss the 1959 indictment for failure to allege a fraudulent scheme under § 1341, and ordered a dismissal of the indictment herein. This appeal by the government followed.

The indictment, in the first count, charges, *inter alia:*

The August 1957 Grand Jury charges that at all times mentioned in this indictment Daniel P. Unger, defendant herein, was engaged in the practice of law at Chicago, Illinois; that at all times mentioned in this indictment M. Edward Ushkow, defendant herein, was engaged in the practice of medicine at Chicago, Illinois; that commencing at a time which is not exactly known to the Grand Jurors, but which was prior to August 20, 1954, and continuing to about May of 1958, the said Daniel P. Unger and the said M. Edward Ushkow devised and intended to devise a scheme and artifice to defraud and for the purpose of obtaining money by false and fraudulent pretenses and representations from [*] individuals and corporations involved in motor vehicle collisions and from insurance companies engaged in the business of insuring individuals and corporations against liability for personal injury arising out of the operation of motor vehicles.[*]

2. It was a part of the scheme and artifice to defraud that the defendant Unger would present personal injury claims on behalf of various persons involved in motor vehicle collisions, which persons are hereinafter referred to as claimants.

3. It was a further part of the scheme and artifice to defraud that the defendant Unger would obtain the names of the insurance companies intended to be defrauded, that is, the insurance carriers of the individuals and corporations against whom the aforesaid personal injury claims were to be presented.

4. It was a further part of the scheme and artifice to defraud that, at the instance of defendant Unger, the defendant Ushkow would cause to be prepared and permit the preparation of certain written reports which would purport to describe injuries and symptoms found by him after physical examination of the claimants, and which would purport to describe treatment administered to the claimants by the defendant Ushkow.

5. It was a further part of the scheme and artifice to defraud devised and intended to be devised by the defendants Unger and Ushkow that the aforementioned reports would be false and fraudulent, in that said reports would list and describe non-existent and fictitious injuries and symptoms, and would list treatment not administered nor recommended by the said Ushkow.

6. It was a further part of the scheme and artifice to defraud that the defendant Ushkow would prepare and cause to be prepared bills for the fictitious treatments listed in the aforementioned reports.

7. It was a further part of the scheme and artifice to defraud devised by the defendants Unger and Ushkow that the defendant Unger, well knowing the aforementioned reports and bills to be false and fraudulent as aforesaid, would submit said reports and bills to the individuals, corporations and insurance companies intended to be defrauded, and that the said Unger would represent and pretend to the said individuals, corporations and insurance companies that the said reports and bills were true and correct, with the intent thereby to induce the said individuals, corporations and insurance companies to pay money in settlement of the claims presented by Unger based upon the fictitious injuries and symptoms described in the said reports.

In support of the action of the district court, Unger's counsel refers us to that part of the indictment which we have indicated as lying between the asterisks in the above quotation. Counsel says that this language is vague, ambiguous, uncertain and indefinite and that it was the intention to conceal rather than inform of the nature and cause of the accusation.

The remainder of the first count recites that "on or about December 30,

1954, at Chicago, Illinois, in the Northern District of Illinois, Eastern Division, and within the jurisdiction of this Court" the named defendants "for the purpose of executing the aforesaid scheme and artifice, and attempting to do so, did cause to be placed in an authorized depository for mail matter an envelope addressed to:

"American Automobile Insurance Co.,
175 West Jackson Blvd.,

Chicago, Illinois.

Attention:  Mr. Dick Anderson, which envelope contained the following: a letter dated December 30, 1954; a medical report and bill of M. Edward Ushkow, M.D., purporting to describe and set forth the injuries, symptoms, and treatment of Cleto Quesada, and the medical fee charged therefor; a medical report and bill of Herbert M. Smulson, M.D., purporting to describe and set forth the injuries, symptoms and treatment of John Loster, and the medical fee charged therefor; and a purported copy of a statement from Midwest Electric Co. concerning John R. Loster's absence from work. The said envelope, containing the said enclosures, was to be sent and delivered by the Post Office Establishment of the United States; in violation of Section 1341, Title 18, United States Code."

Counts two to ten inclusive are similar to that part of the first count above described except that other persons and insurance companies, dates, etc., are mentioned.

While it does not appear from the indictment that the individuals, corporations and insurance companies intended to be defrauded were known by Unger at the time the alleged scheme to defraud was entered into with his codefendant, it is not necessary that such be the case. The indictment sufficiently alleges that the defendants devised and intended to devise a scheme and artifice to defraud, defined the purpose of the scheme and the means of accomplishing that purpose, as well as the class from which they would select their victims. This is sufficient for the purpose of pleading in a criminal case, inasmuch as the indictment also specified the manner in which the scheme was carried into effect as to various named persons, corporations and insurance companies.

Unger discusses United States v. Shavin, 7 Cir., 287 F.2d 647, 649, where we reviewed a judgment upon a jury verdict finding defendant guilty on two counts of an indictment charging violation of 18 U.S.C.A. § 1341. At 649 of 287 F.2d, we said:

" * * * The two necessary elements for the violation of '18 U.S.C.A. § 1341 are (1) the formation of a scheme with an intent to defraud, and (2) the use of the mails in furtherance of that scheme.' Lemon v. United States, 9 Cir., 1960, 278 F.2d 369, 373. The indictment here definitely charges the defendant, as a practicing attorney, with a continuing scheme to defraud insurance companies by falsely representing the amount of the medical bills to insurance carriers against whom the defendant's cients had claims. It includes certain named companies. We are of the opinion that the indictment sufficiently charges the two necessary elments of the offense and by specifically describing the mailing, the gist of the offense, the defendant is protected from being placed in jeopardy a second time for the same offense."

In the case at bar the purpose of the alleged scheme was to reach into the future and defraud insurance companies or individuals thereafter involved in automobile accidents, who, except for that broad description, were unidentifiable at the time the scheme was devised. In this respect this case is distinguishable from the Shavin case where it was possible to name in the indictment certain insurance companies which defendants selected as victims when they devised their scheme to defraud.

This case is clearly distinguishable from United States v. Hess, 124 U.S. 483, at 488, 8 S.Ct. 571, 31 L.Ed. 516, cited

by Unger, where the court held, that a count of an indictment in that case failed to state all the particulars constituting the offence of devising a scheme to defraud.

United States v. Simmons, 96 U.S. 360, 24 L.Ed. 819, upon which Unger relies, is not in point. There defendant in the second count of an indictment was charged with causing and procuring someone else to use a still, boiler and other vessels for the purpose of distilling, but the count did not state the name of that person. The court held, at 362 of 96 U.S., that it was neither impracticable nor unreasonably difficult to have done so. Neither in principle nor factually is Simmons similar to the case at bar.

Unger also relies on Larkin v. United States, 7 Cir., 107 F. 697. There the indictment showed that the scheme of defendant was to defraud definite individuals with whom it was intended to open correspondence. It was held, therefore, that they should have been described by name in the indictment or a good reason given for the omission. We do not think Larkin is applicable to the case at bar.

The indictment is not subject to the attack made upon it in this case.

For the reasons herein set forth the order of the district court is reversed and this cause is remanded to that court with directions to overrule the motion to dismiss the indictment and to proceed further in a manner not inconsistent with the views herein expressed.

Reversed and remanded with directions.

Appellee's Petition for Rehearing.

SCHNACKENBERG, Circuit Judge.

In Ader v. United States, 7 Cir., 284 F. 13 (cert. denied 260 U.S. 746, 43 S.Ct. 247, 67 L.Ed. 493), we reviewed a conviction of Ader and others under an indictment charging violation of § 215 of the Criminal Code and also a conspiracy to violate that section. In brief, the indictment charged defendants

"* * * devised a scheme for obtaining money and property from a certain class of persons by means of false and fraudulent pretenses and representations. * * *"

and that

"* * * class of persons were described as those whom the defendants should 'by means hereinafter described' induce to give, send, and pay their money and property to the defendants * * *"

for purchasing shares of stock in a corporation known as Consumers' Packing Company.

It was also charged that,

"* * * having devised the scheme and artifice, and for the purpose of executing the same, the defendants placed and caused to be placed in the post office at Chicago for delivery by mail a letter addressed and to be carried by mail to one Fred Frazier, who is alleged to be one of the persons of the class of persons referred to in the indictment * * *".

In separate counts, allegations of mailing to other persons were set forth.

At page 23 of 284 F., we said:

"* * * Under the scheme as charged the defendants could not themselves know, when they devised it, the particular persons who would be injured. It was the proper province of the indictment to describe the scheme as it was devised as accurately as possible, and in those cases where the scheme is of the nature of a dragnet to capture all of the public who may be attracted to and entangled in its mesh, without regard to individuals, it would quite clearly be inaccurate and misleading to attempt to name the persons designed to be injured. To do so would characterize the scheme as one aimed at the particular individuals, when in fact the scheme as devised did not do so. As we view it, the scheme here set out as alleged to have been devised contemplated the public as

its field of operation, and we see no reason for requiring that those who may be injured as the scheme is executed be named nor excuse given for omitting their names. The nature of the scheme is itself sufficient reason for the omission. The indictment, in our opinion, falls outside that under consideration in the case of Larkin v. U. S., [7 Cir.,] 107 Fed. 697, * * *."

Having fully considered the petition for rehearing, it is denied.

Petition for rehearing denied.