**NORCOTT v. UNITED STATES, and four other cases.**

Nos. 4913–4917.

Circuit Court of Appeals, Seventh Circuit.

July 8, 1933.

George I. Haight, Warren Nichols, Alvin G. Hubbard, Ward Ross, Alvin D. Blieden, and Harry Olsoñ, all of Chicago, Ill., for appellants.

Dwight H. Green, U. S. Atty., Joseph A. Struett, Asst. U. S. Atty., and Thomas Dodd Healy, Sp. Asst. to Atty. Gen., all of Chicago, Ill., for the United States.

Before ALSCHULER and SPARKS, Circuit Judges, and WILKERSON, District Judge.

SPARKS, Circuit Judge.

The validity of this indictment was challenged by demurrer and by motion in arrest of judgment. It is contended by appellants that each count fails to aver the name or names of any person or persons to whom appellants are charged to have made any of the false representations, or who, relying thereon, parted with any money or property. It will be observed that each count named the person to whom representations and promises were made, but appellants insist that both allegations are necessary for the reason that each count is based on the second clause of section 215 of the act (18 USCA § 338) and charges the use of the mails in carrying out and *executing* a scheme to obtain money and property as distinguished from the use of the mails to carry out a *contemplated* scheme to that effect; and that inasmuch as the fraudulent design is charged to have been accomplished, it is necessary to describe that design and its results as specifically as if the injured party were seeking damages for the fraud. We do not conceive this to be the law. The crime defined under section 215 is that of using the mails for the purpose of executing certain schemes or artifices. The first clause deals with those who have devised or intend to devise any scheme or artifice to defraud; the second clause deals with those who have devised or intend to devise any scheme or artifice for obtaining money or property by means of false or fraudulent pretenses, representations or promises. Under the first clause, which was in the Act of 1889 (25 Stat. 873), it has been held that it is unnecessary to allege the names of the victims if they be unknown. Durland v. United States, 161 U. S. 306, 16 S. Ct. 508, 40 L. Ed. 709. See Ader v. United States (C. C. A.) 284 F. 13. The second clause of the Act was an amendment enacted in 1909, and an indictment under that clause which referred to the victims as a class without naming them or alleging that they were unknown was held sufficient by this court in Grossman v. United States (C. C. A.) 282 F. 790. See Preeman v. United States (C. C. A.) 244 F. 1. It is true that the cases referred to do not allege that the fraud was accomplished, but we are unable to see why that should make any difference. The use of the mails for fraudulent purposes is the gist of the action, and other relevant facts need not be alleged with strict particularity. Fournier v. United States (C. C. A.) 58 F. (2d) 3; Butler v. United States (C. C. A.) 53 F.(2d) 800; Busch v. United States (C. C. A.) 52 F.(2d) 79; Scheib v. United States (C. C. A.) 14 F.(2d) 75. See, also, United States v. Behrman, 258 U. S. 280, 42 S. Ct. 303, 66 L. Ed. 619. Aside from the allegations relative to the accomplishment of the fraud, each count alleges that appellants devised the scheme to obtain the property and money, and each count is sufficient on that theory. If we therefore concede that appellants are right in their contention regarding the lack of allegations to support the charges

as to completed transactions, then whatever may be alleged in the indictment on that subject, will be considered as surplusage, and, as appellants admit, proof of the completed act is sufficient to sustain the charge of design.

Appellants further contend that the negations pleaded are not sufficiently specific, but we think that contention is without merit, and we are also of the opinion that the indictment is not duplicitous. Cochran v. United States (C. C. A.) 41 F.(2d) 193; Scheib v. United States (C. C. A.) 14 F.(2d) 75; Silkworth v. United States (C. C. A.) 10 F.(2d) 711; Gourdain v. United States (C. C. A.) 154 F. 453.

We think there was no error in overruling appellants' motion for a bill of particulars. The representations relied upon were sufficiently specific. The articles mailed were enclosed in envelopes which were addressed respectively to certain individuals named in the several counts, and the evidence supported those charges. The record does not disclose that appellants were either surprised or prejudiced by the court's refusal to grant a bill of particulars. The matter of granting or refusing such motion, if properly exercised, was within the trial court's discretion, and is not reviewable here. Horowitz v. United States (C. C. A.) 262 F. 48; Savage v. United States (C. C. A.) 270 F. 14; Hyney v. United States (C. C. A.) 44 F.(2d) 134.

There was evidence admitted as to appellants' representations relative to the Calhoun Beach and Chestnut Street bonds which were not mentioned in the indictment, and upon this ruling appellants predicate error. This evidence was properly received on the question of appellants' intent, and not primarily in support of any specific crime charged in the indictment. Moore v. United States, 150 U. S. 57, 14 S. Ct. 26, 37 L. Ed. 996; Painter v. People, 147 Ill. 444, 35 N. E. 64; People v. Molineux, 168 N. Y. 264, 61 N. E. 286, 62 L. R. A. 193; People v. Harris, 136 N. Y. 423, 33 N. E. 65; State v. Tettaton, 159 Mo. 354, 60 S. W. 743; Wigmore on Evidence, § 302.

Appellants contend that the court, by excluding material issues of ultimate fact from the consideration of the jury, denied them their constitutional right of trial by jury. This contention is based on the following instruction given by the court:

"In fact, I think I may say, and fairly say, that the mailing is conceded. The defendants deny, however, that the mail matter was sent through the United States Post Office in connection with any scheme or device to obtain money or property by means of false representations, pretenses or promises. If the defendants, or some of them, devised the scheme, as charged in the indictment, then such of the defendants as devised the scheme are guilty on all counts."

The specific point made is that the acts of mailing were material facts which should have been submitted to the jury for determination. Of course, mailing was a material fact and raised a material issue, and the court told the jury in its second instruction that the burden was upon the Government to establish guilt beyond a reasonable doubt and that that statement applied to every material issue. He further stated that it was within the court's province to express its conclusions and inferences from the facts, but that it was not the court's intention to do so, and if he had done so or should do so, the jury were not bound by such opinion. The facts are that the mailing in respect to each count was proven, and not only was never denied by appellants, but was even admitted in argument to the jury. Furthermore, no objection was interposed to the instructions by any appellant. There is no merit in this contention.

It is further contended by appellants that the court erred in excluding an audit of the books and appraisal of the assets of H. O. Stone and Company made by an auditor and an appraiser of the Securities Commission of the State of Illinois. These documents were not identified by their respective authors, and so far as the record discloses, the authors were not available for cross-examination, and no one testified as to the accuracy of the documents. Under those circumstances the audit and appraisal were properly excluded as hearsay evidence. United Surety Co. v. Summers, 110 Md. 95, 72 A. 775; Underwood Typewriter Co. v. City of Hartford, 99 Conn. 329, 122 A. 91; Coal Creek Drain. & Levee Dist. v. Sanitary Dist., 336 Ill. 11, 167 N. E. 807.

Appellants predicate error on the court's ruling in admitting in evidence appellant Norcott's petition on behalf of H. O. Stone and Company for a refund of income tax for the year 1928. This petition was prepared and filed November 17, 1930, after appellants Needham, Bennett, and Packer had retired from the company. The company's return for that year which was admitted in evidence was made upon a cash receipts and disbursement basis, showing a taxable income of $595,649.98 and a tax of $71,478 which was paid. Norcott's petition was for a refund of

that tax, and was made upon an accrual basis and showed a loss for that year of $207,575.34. We think this petition was properly submitted to the jury as bearing upon the financial condition of the company for that year. That fact was in issue as to all appellants, for all were connected with the company during a part or all of that year. The fact that Needham, Bennett and Packer retired before the petition was filed in 1930 would render it no less competent against them. It was the company's statement, verified by Norcott, of its actual financial condition, taken from the books and covering a time when all appellants were members. It was not only competent as an admission against Norcott, but it was admissible in proof of the actual financial condition of the company in 1928. Norcott who made and verified it was in court and was subject to examination as to its correctness by the other appellants if they so desired. This fact is sufficient to distinguish this question from the one raised by the offer in evidence of the audit and appraisal of the Securities Commission of Illinois. The court's ruling in this respect was proper.

■ With respect to this income tax exhibit appellants also assign error in that the court, over their objection, sent the exhibit to the jury room after the jury had retired, notwithstanding the fact that it had not been read nor physically exhibited to the jury prior to that time. The exhibit was admitted in evidence and the district attorney offered to read it to the jury. Thereupon counsel for appellants objected to the Government's reading certain exhibits to the jury to the exclusion of others, and asked for a ruling requiring that all exhibits be read in the order of their admission. The court then inquired of the district attorney the object of the reading, and whether he proposed to read the exhibit in its entirety. The attorney replied that he did not, but that he desired to read certain portions for the purpose of comment. This the court declined to permit, whereupon the district attorney said he would read it line for line if necessary. The court then observed that after doing so, neither the jury nor the court nor the other lawyers would know anything about it. It was then suggested by counsel for appellants that the argument was the time for such reading, to which the district attorney acquiesced, and no further effort was made to read it to the jury. Parts of it were quoted to witnesses upon cross-examination, and its contents were fully discussed in argument to the jury by the district attorney and by at least three separate

counsel for the appellants. Under these circumstances we are convinced that there was no prejudicial error in sending the exhibit to the jury after their retirement, and if there be such error, it was at least partially invited by appellants' insistence that the proper time to acquaint the jury with the contents of written exhibits was in argument after the evidence had closed.

■ It is also contended by appellants that the court erred in denying them the right to adduce evidence showing what became of certain assets of Stone and Company after July 9, 1930, and the conditions of the company that obtained shortly preceding the appointment of its receiver. The Government had presented evidence designed to prove that appellants had promised and predicted that Stone and Company stock would be enhanced in value and that its debentures and the Lawsonia bonds would be paid, but that in fact the stock had become worthless, the debentures had defaulted, and Lawsonia bonds were worth only seven cents on the dollar in September, 1932. It was appellants' contention that much of the reduction in value of these securities after July 9, 1930, was due to the unwise, unlawful and arbitrary acts of one Alexander who on that date entered the service of H. O. Stone and Company as financial adviser. They claimed that although he was neither an officer nor a stockholder, the proffered evidence would show that he dominated and controlled the policies and business of the company much to its disadvantage and against their will, and that they were unable to prevent his prejudicial activities through fear of immediate financial disaster. This assignment of error as we understand it, relates to the exclusion of evidence regarding Alexander's conduct and certain conversations with relation thereto. The record on this subject is fairly extensive, and not all the court's rulings with respect to it are discussed in appellants' briefs. However, a sufficient number are discussed to present their position clearly to the court. Their contention is that the rejected evidence tended to show (1) the financial condition of the company from July 9, 1930, to the time the receiver was appointed in December, 1930, and the disposition of its assets, (2) the domination of its affairs by Alexander during that period, and (3) that Alexander prevented appellants from paying the purchase money mortgage on the Lawsonia property. A perusal of the record does not disclose that the court unduly prevented appellants from showing the condition of the company at any time after 1927,

or the disposition of its assets, or the dominating acts of Alexander, except with relation to certain matters which we consider extraneous to the issue, and also except to the payment of the Lawsonia first mortgage, and in these respects we think the court's rulings were correct. At the times Alexander refused to permit payment of that mortgage, the company's bonds on that property had already been issued and many of them disposed of as first mortgage bonds, and appellants were continuing to dispose of them as such. So far as appellants were concerned the wrong had been committed, and the fact that Alexander subsequently refused to permit the company to pay the purchase money mortgage in order to extricate appellants from the predicament of their own making, would not excuse them for the wrong they had committed nor would it in any way shed light on their intention. It is always proper for one charged with crime to prove any fact which throws light upon his intention where that element is involved, or to show that some material act or condition with which he is charged was in fact caused by some other person. We think the rulings of the court in relation to this assignment of error fairly follow that rule and were not prejudicial.

 Appellants insist that the court erred in excluding as evidence the appraisals of the Lawsonia property made by the American Appraisal Company, and which, as disclosed by the record, were relied upon by appellants in making the representations relative to that property, with which they are charged. These appraisals were made at the request of H. O. Stone and Company in an effort by that company to qualify the Lawsonia bonds with the Securities Commissions of Wisconsin, Minnesota, Indiana and Kentucky. In passing on appellants' motion for a new trial the court stated that this ruling was probably a technical error, but was harmless in view of the fact that Government witness Green had testified to the figures contained in the appraisals. The indictment not only charged that the mortgage which secured the Lawsonia bonds was not a first mortgage as represented, but also that the security was practically valueless because the Lawsonia venture was a failure and the real estate covered by the mortgage was unsalable. The appraisals contain much more than the figures, which it is claimed were fully disclosed by Green's testimony, and appellants were entitled to have the complete appraisals received in evidence, as bearing upon their good faith in making

the representations other than those concerning the character of the mortgage. Corliss v. United States (C. C. A.) 7 F.(2d) 455. We think it cannot be said that this error was not prejudicial.

 The most strongly urged assignment of error lies in the exclusion of appellants' offers of evidence relating to the financial condition of H. O. Stone and Company during the years 1922 to 1927, inclusive. This evidence was contained in six separate audits of that company made by its auditing department for its officers and delivered to them at the close of the several years which the audits respectively purport to cover. At the trial, the Government admitted that there was no illegality in the management of the company's affairs prior to 1928, and that the company during those years did a prosperous business. In view of that admission the court confined the defense to the condition of the company during the years 1928, 1929, and 1930, notwithstanding the fact that it had permitted the Government, in a measure at least, to introduce some evidence relating to the company's condition prior to 1928, and to introduce evidence of representations made by appellants as to the company's financial condition during all the years of 1922 to 1930, inclusive. These representations were on their face rather extravagant, and were such as none but a company with extraordinary financial strength could reasonably make. They claimed a substantial and rapid growth in assets, income, earnings, dividends and surplus, and, if true, they constituted a rather substantial basis for the promises which were proven to have been made. It was in support of those representations that appellants offered the audits and we think they should have been received. It was not a sufficient answer to the offer to say that the Government admitted on trial that the company had been solvent and prosperous from 1922 to 1928, for appellants were entitled to show the degree of prosperity which the company had enjoyed, in order to prove, if they could, that the promises and representations which they had made were not unreasonable, or beyond the power of the company to accomplish in view of its past experiences. Worthington v. United States (C. C. A.) 64 F.(2d) 936; Hair v. United States (C. C. A.) 240 F. 333. The Government introduced much evidence well calculated to disprove the company's audits for 1928, 1929, and 1930, and without any showing on the part of appellants for the time prior to 1928, the jury was

without definite evidence as to the company's past condition and experience.

In the inducement to the charges of the indictment it was alleged that the company was quite prosperous and enjoyed a reputation for integrity and honesty from its inception in 1887 to 1922, and that from that period it declined in financial worth and became insolvent as a result of the mismanagement of appellants. It is quite true that the Government was not bound to prove the allegations of the inducement, for they constituted no part of the charges. They were merely descriptive of the circumstances which the Government evidently thought existed when the representations were made. After the indictment was filed it was apparently discovered that certain of the allegations of the inducement were not true, and that the company was solvent and prosperous and guilty of no illegal conduct from 1922 to 1928, whereupon those facts were very properly and promptly admitted by the Government. However, if those allegations had been found to be true there can be no doubt that the Government would have been entitled to support them with competent evidence in order to magnify the appellants' bad motive and intent. Indeed such evidence would have been quite pertinent for that purpose. By the same token, appellants were entitled to show the absence of bad motive and intent. They were aided in this effort to a certain extent by the Government's admissions that the concern had been prosperous for forty-one years prior to 1928, and that its subsequent financial misfortunes had been caused at least in part by the depression. The audits which were offered as evidence and rejected purported to show in detail the character of the prosperity and growth of the business from 1921 to 1928, and appellants were entitled to have them considered by the jury in order that it might determine from them, together with all other pertinent evidence whether they made the promises and representations in good faith and with reasonable probability of performance. It is quite easy now to understand that the promises were ridiculous, because we were on the verge of a depression of cataclysmic dimensions which no one could anticipate or avoid. But appellants' motives and intentions are to be judged by the known facts and circumstances existing at the time the representations and promises were made.

The Government insists, however, that the audits were not admissible for the reason that the record does not disclose that appellants had ever seen them until after the representations and promises were made, and hence they could not have relied on them. The audits merely constituted the means by which appellants sought to establish a fact which was vital to their defense, namely, the financial condition of the company, and the admissibility of proof of that fact cannot be made to depend upon prior knowledge of the means by which the proof is accomplished.

There is evidence in the record which might well warrant a jury in concluding that the books of the company did not properly reflect its true financial condition or the true valuation of the securities which it sought to dispose of, but in this discussion we are not concerned with the truth or falsity of the audits. The admission of evidence does not depend upon its truth or falsity, for the determination of that fact is peculiarly within the province of the jury, and neither the trial court nor the reviewing court can infringe upon that authority.

The intention of the appellants is a most vital element in this cause. They are the only ones who have absolute knowledge concerning that subject. Their evidence, of course, is to be weighed as other evidence, but on account of their intense interest their statements as to their intention are to be considered with great caution. For this reason circumstantial evidence, as in all such cases, must play an important part in the determination of that fact, and all circumstances which reasonably throw light upon that subject, either directly or indirectly, should be received in evidence on behalf of both the Government and those charged with crime. See Wood v. United States, 16 Pet. (41 U. S.) 342, 10 L. Ed. 987. Such evidence is not only quite important to the jury in the determination of guilt, but it is equally important to the court in the imposition of penalty.

For the reasons hereinbefore stated the judgment is reversed and the cause remanded for retrial.