UNITED STATES of America,
Plaintiff-Appellee,

v.

Nathan W. SHAVIN, Defendant-
Appellant.

No. 13062.

United States Court of Appeals
Seventh Circuit.

Feb. 14, 1961.

Rehearing Denied April 13, 1961.

Anna R. Lavin, William T. Kirby, Chicago, Ill., for appellant, Charles A. Bellows, Chicago, Ill., of counsel.

Robert Tieken, U. S. Atty., John F. Grady, Asst. U. S. Atty., Chicago, Ill., for appellee, John Peter Lulinski, Asst. U. S. Atty., Chicago, Ill., of counsel.

Before HASTINGS, Chief Judge, SCHNACKENBERG, Circuit Judge, and PLATT, District Judge.

PLATT, District Judge.

The grand jury returned an indictment of nine counts charging the defendant with using the mails to defraud in violation of the Criminal Code, Title 18 U.S.C. § 1341. At the first trial the jury disagreed and was discharged. On the second trial the Government dismissed Counts 1, 5 and 7, and the jury found the defendant guilty only on Counts 6 and 8. The district court denied the defendant's motions for judgment of acquittal, for new trial in arrest of judgment, and sentenced the defendant for a period of one year and one day, and imposed a fine of $1,000.00 on each count. From these rulings the defendant has appealed.

The defendant presents fourteen contested issues. In substance "the errors relied on arise out of the sufficiency of the indictment, the jurisdiction of the court, failure to grant defendant's motions for judgment of acquittal, double jeopardy, the untimely allowing of amended bills of particulars, rulings on evidence, the instructions, and the failure to grant defendant's motion in arrest of judgment and for a new trial." (Defendant's brief p. 2.)

The defendant first maintains that the indictment is defective. The first count of the indictment in substance charges that prior to September 3, 1952, and continuing to the date of filing the indictment, November 5, 1956, the defendant devised and intended to devise a scheme

and artifice to defraud for the purpose of obtaining money by false and fraudulent pretenses and representations from certain insurance companies with offices located in the city of Chicago, Illinois, which were the insurance carriers for individuals and corporations against whom clients of the defendant had claims for personal injuries, and which insurance carriers included seven named companies. The scheme and artifice to defraud charged that the defendant would serve as attorney for various persons in the presentation of personal injury claims; that the defendant would obtain the names of insurance carriers of the individuals and corporations to whom the personal injury claims were to be presented; that the defendant would obtain bills from the physicians who had treated his clients for the injuries they had sustained; that the defendant would prepare documents which purported to be copies of these bills which would be false in that they would show a higher fee for medical services which were submitted to the insurance carriers of the individuals and corporations; and that the defendant would represent to the insurance carriers that the purported copies were true copies of medical bills with the intent thereby to induce the insurance carriers to pay greater amounts of money in settlement of personal injury claims than they would otherwise have been willing to pay. Count 1 also charged, applicable only to Count 6, that it was further a part of the same scheme to defraud for the defendant to attempt to prevent by fraudulent devices and false representations the discovery by the insurance company that the purported copies were, in fact, false. These allegations set forth in Count 1 of the indictment are realleged, by reference, in Counts 6 and 8. Count 6 in addition thereto charges that on December 10, 1953, at Chicago, Illinois, in the Northern District of Illinois, Eastern Division, the defendant for the purpose of executing the aforesaid scheme and artifice to defraud, and attempting to do so, did place and cause to be placed in an authorized depository for mail matter, a letter, with enclosures, addressed to: Odis Little, M.D., 3005 E. 92nd Street, Chicago, Illinois, which said letter was to be sent and delivered by the Post Office Establishment of the United States. Count 8 also charges that on or about April 5, 1954, at Chicago, Illinois, in the same district, the defendant for the purpose of executing the aforesaid scheme and artifice to defraud, and attempting to do so did place and cause to be placed in an authorized depository for mail matter a letter, enclosing a purported copy of a medical bill for the treatment of Louis Venturi, Jr., addressed to: U. S. Fidelity and Guaranty Co., 170 W. Jackson Boulevard, Chicago, Illinois, Attention: Mr. O'Kane, which letter was to be sent and delivered by the Post Office Establishment of the United States.

The defendant first argues that the indictment is insufficient in that it charges an intention to defraud definite insurance companies by name, and fails to give a valid reason for the omission of other carriers, such as a statement by the grand jury that certain insurance companies were to the grand jury unknown. The defendant relies upon Larkin v. United States, 7 Cir., 1901, 107 F. 697. In the Larkin case the defendant challenged the sufficiency of the indictment by demurrer specifically in the district court upon the ground relied upon here. We find no specific statement such as in the Larkin case by the defendant in his motions to dismiss. Furthermore, the defendant has failed to demonstrate that he was prejudiced in the trial by this technical objection. Such a technical objection, presented only on appeal, should not be recognized. Since the adoption of Federal Rules of Criminal Procedure, 18 U.S.C., and in particular Rule 7(c) and (d) technical objections to indictment are not valid where the elements of the offense are clearly set forth. Stapleton v. United States, 9 Cir., 1958, 260 F.2d 415, 17 Alaska 713. The two necessary elements for the violation of "18 U.S.C.A. § 1341 are (1) the formation of a scheme with an intent to defraud, and (2) the use of the mails in furtherance of that

scheme." Lemon v. United States, 9 Cir., 1960, 278 F.2d 369, 373. The indictment here definitely charges the defendant, as a practicing attorney, with a continuing scheme to defraud insurance companies by falsely representing the amount of the medical bills to insurance carriers against whom the defendant's clients had claims. It includes certain named companies. We are of the opinion that the indictment sufficiently charges the two necessary elements of the offense and by specifically describing the mailing, the gist of the offense, the defendant is protected from being placed in jeopardy a second time for the same offense.

▇▇▇▇ The defendant next contends that because Count 1 of the indictment was dismissed, it is no longer a part of the indictment and cannot be incorporated into Counts 6 and 8. This point is valueless since Rule 7, Fed.Rules Crim. Proc., 18 U.S.C. expressly provides that allegations made in one count may be incorporated by reference in another count. This method of incorporating by reference has been approved. United States v. Garrison, 7 Cir., 1960, 280 F.2d 493. We consider the method used by drawing lines through the words of Count 1 was proper to delete the inapplicable portions.

▇▇▇▇ The defendant also maintains that the judgment for acquittal should have been granted at the first trial and that the failure by the trial court to do so placed the defendant in jeopardy twice for the same offense. The defendant has failed to convince this court that there was not sufficient evidence at the first trial to convict the defendant on Counts 6 and 8. Therefore the district court correctly denied the motion for acquittal and ordered a new trial. In substance the evidence at the first trial as to Counts 6 and 8 was the same as in the second trial on these counts. We will discuss the motion for acquittal on the second trial later in this opinion.

▇▇▇▇ The defendant next contends that the amendment of the bill of particulars which was filed more than three years after the indictment, but more than fifty days prior to the second trial, was prejudicial. Rule 7(f), Fed.Rules Crim. Proc., 18 U.S.C. provides for amendment of a bill of particulars. The length of time which may elapse when amendment shall be permitted is a matter in the sound discretion of the trial court. We do not believe that the trial court abused its discretion because the defendant was given ample time to prepare his defense. United States v. Bender, 7 Cir., 1955, 218 F.2d 869, 874, certiorari denied 349 U.S. 920, 75 S.Ct. 660, 99 L.Ed. 1253.

▇▇▇▇ We come next to the defendant's motion for acquittal which in substance is that the Government failed to prove the defendant guilty as charged in Counts 6 and 8 of the indictment beyond a reasonable doubt. In the determination of whether or not the proof was sufficient to establish the defendant's guilt it must be borne in mind that after a verdict of guilty this court must consider "only the evidence favorable to the verdict and such reasonable inferences as the jury may have drawn therefrom." United States v. O'Brien, 7 Cir., 1949, 174 F.2d 341, 343.

In regard to Count 6 of the indictment, the record is clear that Dr. Little's bill for the care of the defendant's client Copley was $68.00. The amount of the bill submitted by the defendant to the General Accident Fire and Life Assurance Corporation, Ltd., was $200.00. The evidence demonstrates that the medical bills, which are termed "specials", are to be considered in the determination of the amount that the insurance company would pay in the settlement of a law suit. It is a reasonable inference that the defendant, as a lawyer in having settled many personal injury cases, must have known that the insurance company in the settlement of its cases took this information into consideration. "It [was] only [for the Government] to prove that it [was] a scheme reasonably calculated to deceive persons of ordinary prudence. * * *" Silverman v. United States, 5 Cir., 1954, 213 F.2d 405, 407, certiorari denied 348 U.S. 828, 75 S.Ct. 46, 99 L.Ed. 653. The case was settled on November 18, 1953. Shortly after the settlement,

Mr. Doll, a representative of the insurance company, called Dr. Little and was informed as to the correct amount of his medical bill. In turn Dr. Little telephoned the defendant informing him of this call. Defendant then mailed a letter through the United States Post Office on December 10, 1953, to Dr. Little in Chicago, Illinois, which reads as follows:

"Law Offices
"Shavin and Hamilton
"Ten North Clark Street
Chicago 2
"N. W. Shavin                Telephone
"Frank J. Hamilton        Andover 3–6446
"December 10, 1953
"Odis Little, M.D.
"3005 E. 92nd Street
"Chicago, Illinois

"Re: James Copley, 9823 S. Ewing Avenue

"Dear Doctor:
"Pursuant to 'phone conversation, even though this case is settled, I would like to have my files correct and in shape, so I am sending you a medical report showing that there was an estimated bill for $200.00, as the patient was still under treatment, which you will kindly sign and return to us.
"Enclosed is additional check for $25.00 for your trouble.
"Thank you for your cooperation.
"Yours very truly,
"Shavin & Hamilton
"By /s/ N. W. Shavin
"N. W. Shavin
"NWS:am
"Encls."

The check and the medical report accompanied the letter. Defendant does not question that this letter was sent by United States mail but he maintains that the letter, with its enclosures, was not in furtherance of the scheme to defraud. Count 6 (by reference to Count 1) specifically alleges "and to attempt to prevent by various fraudulent devices and false representations the discovery by the insurance carriers that the purported copies were in fact false." The jury could reasonably infer from the letter and the enclosures that the defendant was attempting to prevent the discovery of the false representations made to the insurance company on the amount of Dr. Little's bill. The defendant argues that because the transaction was closed by settlement the letter was not in furtherance of the scheme to defraud. In United States v. McAlpine, 7 Cir., 1942, 129 F.2d 737, 739–740 this court said:

"Even though the scheme be successfully perpetrated by obtaining the victim's property, it still may be important to the schemer's purpose to adopt methods by which the victim may be lulled into a sense of security, or kept in the dark as to the true situation. Such activities, however, would not constitute a new scheme— they would merely serve in aid of the old. In other words, the methods and means employed to accomplish the object of a scheme to defraud are limited only by the ingenuity of the originator."

To the same effect, United States v. Riedel, 7 Cir., 1942, 126 F.2d 81, 83. The scheme in the instant case was a continuing one and there were similar transactions introduced in evidence which occurred after December 10, 1953. It was advantageous to the defendant to prevent the discovery of the fraud in aid of the old continuing scheme.

Coming now to Count 8 of the indictment the evidence discloses that the defendant sent a pink sheet, which he did in other instances, dated April 5, 1954, to the United States Fidelity and Guaranty Company at its Chicago office, setting forth the medical bill as $1,000.00, whereas according to the evidence Dr. Comes' total bill was $500.00, which included the bill of Dr. Arden. While the evidence discloses that the defendant never obtained a settlement of this claim it is not necessary that the defendant obtain money or property. United States v. Sylvanus, 7 Cir., 1951, 192 F.2d 96, certiorari denied 342 U.S. 943, 72 S.Ct. 555, 96 L.Ed. 701. It is only necessary that the proof disclose that there was the for-

mation of a scheme with intent to defraud the insurance carrier, plus the use of the mails in the execution of the scheme. Lemon v. United States, 9 Cir., 1960, 278 F.2d 369, 373.

Defendant further objects, as to Count 8, that there was insufficient proof of the mailing of the letter to the United States Fidelity & Guaranty Company. The evidence discloses that the letter, which was Government's Exhibit 38, contained the initials of the defendant as well as his secretary who was employed by him at the time. This would indicate that the letter was dictated by the defendant. It was addressed to: "U. S. Fidelity & Guaranty Co. 170 W. Jackson Boulevard, Chicago, Illinois, Attention: Mr. O'Kane." This was the address of the Chicago office of the Company. Mr. O'Kane was an adjuster in the claim department of the company. The proof further discloses that it was the custom of the defendant's office, which was located in Chicago, Illinois, to place his mail in a depository for United States mail. The evidence further discloses that it was the custom of the United States Fidelity & Guaranty Company to place a certain stamp on letters received through the mail and this letter was imprinted with this stamp. The date on this stamp was changed from day to day and Government's Exhibit 38 was dated April 5, 1954, and the company's stamp shows it was "Received April 6 1954 Claim Dept." We are of the opinion that the evidence was sufficient to show that the letter was sent by United States mail. United States v. Leathers, 2 Cir., 1933, 135 F.2d 507; Decker v. United States, 4 Cir., 1944, 140 F.2d 378, 151 A.L.R. 754, certiorari denied 321 U.S. 792, 64 S.Ct. 791, 88 L.Ed. 1082. The defendant relies upon United States v. Browne, 7 Cir., 1955, 225 F.2d 751 in support of his objections. In that case there was no proof of any custom of handling of mail in the usual course of business, both in the sending and in the receiving of the letter at the Chicago office of the insurance company. Furthermore, the letter in the instant case was stamped with the particular stamp used by U.S.F. & G. only on letters received by United States mail at its Chicago office.

As further proof of the defendant's intent to defraud the insurance company the Government introduced into evidence six similar transactions with insurance companies, which the defendant insists was error because there was no proof that the mails were used in these transactions. Such proof was not necessary. Strauss v. United States, 7 Cir., 1926, 13 F.2d 122; Weiss v. United States, 5 Cir., 1941, 122 F.2d 675, certiorari denied 314 U.S. 687, 62 S.Ct. 300, 86 L.Ed. 550.

We therefore conclude that there was substantial evidence to carry the question of guilt or innocence of the defendant to the jury on Counts 6 and 8.

We come now to the rulings on the evidence which the defendant claims were incorrect. The defendant offered to prove similar transactions where he submitted true and correct medical bills to these insurance companies in order to show that there was no intent to defraud. The following colloquy occurred:

"The Court: Are you still on your offer of proof?

"Mr. Bellows: I am still on my offer of proof, your Honor, and this is all part of it. That these persons are here and they have been subpoenaed and they are available right now as witnesses, they are outside in the witness room.

\* \* \* \* \* \*

"In other than those which were made part of the indictment and described in the amended complaint, the evidence would show that in pursuance to this further proof of the number of cases, it would show that no bills were ever raised, that the bills that were received by the law firm of Shavin and Hamilton were the same bills that eventually were sent to the insurance company in negotiating the settlement; that these instances described in the indictment

and the amended bill of particulars are the exception to all of the several thousand claims, your Honor, that we are prepared to prove about which there cannot be any dispute that the doctor bill rendered and sent to the law firm of Shavin and Hamilton, and that the same doctor bill was sent to the insurance company.

\*   \*   \*   \*   \*   \*

"Mr. Grady: I would like to know specifically how the defendant expects to prove that bills were submitted on these other cases; that Mr. Shavin submitted them, that they were the actual bills that were submitted by the doctors?

\*   \*   \*   \*   \*   \*

"Mr. Grady: I want to state for the record that I don't believe the evidence they are going to seek to introduce will show that.

"Mr. Bellows: I want to contradict you that it will.

\*   \*   \*   \*   \*   \*

"The Court: The objection of the Government to the defendant's so-called offer of proof will be sustained."

The indictment charged the defendant, as a lawyer, with a continuing scheme with intent to defraud insurance carriers. The defendant attempted to rebut the scheme and the intent to defraud insurance companies by this evidence which he was not permitted to do. In Worthington v. United States, 7 Cir., 1933, 64 F.2d 936, a similar situation occurred. The defendant was indicted for violation of the Mail Fraud Statute. The defendant platted additions, sold the lots, then in turn sold the land contracts on lots, misrepresenting their value. This court stated at page 940:

"From such evidence the Government argued that appellant had devised a scheme to defraud and that it was to be effectuated by his selling this worthless paper to innocent purchasers who paid sums known to appellant to be in excess of the true value of the paper.

"It was to meet this position of the Government, thus briefly set forth, that appellant offered the testimony of witnesses who purchased other contracts and who received the full amounts due thereon. Such evidence, while not conclusively disproving the existence of a fraudulent scheme or purpose on appellant's part, would tend to refute the Government's evidence tending to establish a fraudulent scheme. Ordinarily, evidence of other transactions not connected with the one in question is not admissible to establish or disprove the fraud upon which an action for damages is predicated. But here we have a different issue. It was competent, as stated in Lefkowitz v. U. S., 273 F. 664, 666 (C. C.A. 2), for both parties to 'show every part and parcel of such business, or the method of conducting it, calculated to shed light upon the intent and purpose of its managers.'"

To the same effect Norcott v. United States, 7 Cir., 1933, 65 F.2d 913, certiorari denied 290 U.S. 694, 54 S.Ct. 130, 78 L. Ed. 597. This offer of proof by the defendant was competent in opposition to the proof of the fraudulent scheme and the intent to defraud. Of course, it was within the sound discretion of the trial court to limit the number of transactions in the proof.

The Government relies in opposition to the defendant's offer of proof upon United States v. General Motors, 7 Cir., 1941, 121 F.2d 376, certiorari denied 314 U.S. 618, 62 S.Ct. 105, 86 L.Ed. 497. However, in that case the Worthington case was not overruled but distinguished. At page 405 of 121 F.2d this court said:

"We believe the Worthington case is distinguishable, primarily for the reasons stated below. In the Worthington case the defendant was charged with using the mails in executing a scheme to defraud, the scheme being grounded on the sale of purportedly worthless land. The basic matter in dispute was the value of certain 'lots in the same addition'

and the excluded testimony was positive in character, tending to prove the affirmative fact that the lots had value and refuting the Government's evidence that the lots were worthless."

In the instant case the defendant attempted to prove transactions where the medical bills were as represented. The crucial issue in the instant case was the existence of a scheme with intent to defraud and lack of good faith. The Government was properly permitted to introduce evidence of similar transactions to prove fraudulent intent, and conversely the defendant should be entitled to negate the fraudulent intent by the evidence which was offered. The transcript of the evidence as a whole discloses that it was a close question as to whether or not the defendant had the intent to defraud or acted in good faith. At the first trial the jury disagreed and in the second trial the defendant was found guilty only on Counts 6 and 8. We are not prepared to say that the jury would have returned the same verdict or a verdict of not guilty had the defendant been permitted to introduce the evidence which he offered. It was error to deny the defendant the opportunity to make this proof.

■ This brings forward the issue as to whether or not the court should have stricken from the evidence Defendant's Exhibit 45(e), which was a statement made by the defendant to the adjuster of the Travelers Insurance Company at the time of the negotiations on the Pampinella claim, which was one of the similar transactions introduced into evidence by the Government. The adjuster recorded this statement made to him during the negotiations as an inter-office memorandum. It was qualified under the "Shop Book Rule," § 1732, Title 28 U.S.C. The Government, on the same basis, introduced into evidence other documents from the same file. The exhibit was stricken from the evidence on the objection by counsel for the Government that the statement was self-serving, and that the defendant testified that a part of it was incorrect. The defendant also testified

that the statement was substantially correct. It was a part and parcel of the transaction and relevant upon the defendant's intent to defraud, and should have been admitted in evidence. See Miller v. United States, 10 Cir., 1941, 120 F.2d 968, 970.

Finally, the defendant has objected to the various instructions in the charge to the jury. As a whole the charge to the jury was substantially sufficient, with the exception that the instruction on the evidence on similar transactions might have been more explicit. Since the case must be retried it is not necessary to prolong this opinion by further discussion of the defendant's objections.

The judgment is reversed and the cause is remanded for new trial.