UNITED STATES of America, Appellee,

v.

Joseph F. MARTIN, Jr., Defendant,
Appellant.

No. 82–1243.

United States Court of Appeals,
First Circuit.

Argued Nov. 1, 1982.

Decided Dec. 6, 1982.

Emmanuel N. Papanickolas, Peabody, Mass., for defendant, appellant.

Maurice R. Flynn, III, Asst. U.S. Atty., with whom William F. Weld, U.S. Atty., Boston, Mass., was on brief, for appellee.

Before COFFIN, Chief Judge, CAMP-BELL and BROWN *, Circuit Judges.

* Of the Sixth Circuit, sitting by designation.

COFFIN, Chief Judge.

Appellant Joseph F. Martin, Jr. was charged under 18 U.S.C. § 1341 with multiple counts of mail fraud in the sale of insurance products. The government presented evidence tending to show that appellant carried on a wide variety of fraudulent practices, directed primarily at elderly clients, including forging clients' signatures, creating insurance applications with false information, overcharging clients for insurance premiums, selling insurance in disregard of insurance already in effect, misrepresenting types of insurance being sold, and stealing money from clients. A jury returned a verdict of guilty on nine counts. On appeal, appellant claims errors of three sorts: (1) improper jury instructions; (2) improper exclusion of evidence; and (3) denial of his motion for acquittal.

## I. Jury Instructions

Appellant draws our attention to two jury instructions which he argues warrant reversal of his conviction. No objection was made at trial to either instruction. Our standard of review, therefore, is plain error.

■ The first allegedly erroneous instruction was given in response to appellant's request for an instruction that even though he might have forged the signatures of some clients, he committed no fraud if those clients later ratified their signatures in some way. The judge instructed:

"Now, you've had some incidents of apparently forged applications for insurance. If you find that the applicant knowingly thereafter made out a check for the premium, knowingly, I said, knowing what it was for, then that would be evidence of ratification of that signature, and there would be nothing fraudulent or illegal about that provided that it's a knowing act by the applicant."

Appellant argues that the instruction assumed the existence of a material fact at issue—the forging of signatures by appellant. But the instruction says "apparently forged applications". Moreover, appellant had admitted in testimony at trial signing at least one client's name to an insurance application. We cannot say that this instruction, made in response to appellant's request, was plain error.

■ Appellant also alleges error in the court's statement that,

"The Defendant may, if he chooses, put on evidence to attempt to create a reasonable doubt about his guilt, but nothing that Mr. Flynn said should lead you to the impression that the burden of proof is on the Defendant in any respect."

Appellant argues that this instruction implied his guilt and impermissibly shifted the burden of proof to him. Though the first half of the sentence is perhaps unartful, its potential for misleading the jury as to burden of proof is largely cured by the second half of the sentence. Moreover, the challenged statement was part of an additional, cautionary instruction interjected by the court after the prosecutor's closing argument. The first part of that instruction gave a strong statement of the government's burden.

"I would like to interject a brief instruction here so that you won't be subject to any misapprehension as a result of, I think, a totally inadvertent possibility of error that comes up as a result of [the prosecutor's] argument to you.

"At the end he finished up by saying something to the effect that what you heard from the defendant was just another sales pitch, and the question was whether you were going to buy it or not. On reflection, during the recess, I became concerned that you might get the impression that there was some burden of proof on the defendant. The defendant has no burden of proof in the case. All of the burden of proof is on the government. I'm going to go into that in greater detail at the end of the case, but the burden of proof of every element of the crimes charged is on the government, and the defendant has no burden of proof."

Considering the court's instruction as a whole, we find no plain error. See United States v. Caron, 615 F.2d 920, 921 (1st Cir. 1980).

## II. *Evidentiary Rulings*

### A. *Prior statement of witness*

 Ruth Kenyon was among the victims of appellant's alleged insurance fraud. The government presented evidence to show that appellant had filed insurance applications with inaccurate information on her behalf and had sold her redundant health insurance plans. In an attempt to show that Mrs. Kenyon was not defrauded but rather "playing the insurance game" and making substantial money from overlapping policies, appellant offered to introduce an out of court statement by Mrs. Kenyon, made two weeks prior to trial, that she was sorry that Saugus hospital had closed down because that meant she could no longer collect certain insurance benefits. The court rejected the offered testimony as inadmissible hearsay.

Appellant argues that the testimony should have been accepted as a prior inconsistent statement of a witness. *See* Fed.R. Evid. 613(b). Such testimony is admitted not for the truth of the matter asserted in the prior statement but to impeach the credibility of the witness. When asked for an offer of proof at trial, however, appellant was unable to demonstrate that the offered testimony was inconsistent with anything Mrs. Kenyon had said at trial. Nor does he demonstrate any inconsistency on appeal. The testimony was also offered as evidence of Mrs. Kenyon's state of mind when she bought the insurance policies. The court rejected that offer, reasoning that Mrs. Kenyon's purported statement, made two weeks before trial, was not relevant to her state of mind at the time she bought the policies some three to five years earlier. We find no error.

### B. *Record of other financial transactions*

 Among the charges of fraud against appellant was that he stole money from clients by taking checks from them made payable to him personally under the pretense that the funds would be applied to insurance premiums. The government introduced seven checks that appellant had received from a Mary Robertson and alleged that he had illegitimately cashed them and retained the money for his own use. Appellant attempted to introduce into evidence another check—drawn by a Gladys Robertson, payable to him and returned for insufficient funds—as well as a financial record of charges to his bank account resulting from that and perhaps other returned checks. These documents were offered to show a "business relationship" in which situations occurred entitling appellant to seek personal reimbursement from the Robertsons.

> "[T]he government is alleging there would be no reason for Joseph Martin to be taking personal checks from the Robertsons. I think we are entitled to produce evidence indicating the contrary."

The offered evidence was excluded as irrelevant because it did not relate directly to the checks that the government had alleged were part of a fraudulent scheme.

Arguing that that exclusion was error, appellant relies on *United States v. Shavin,* 287 F.2d 647 (7th Cir.1961). The defendant in that case, an attorney, was charged with mail fraud in forwarding claims to insurance companies with fraudulently increased doctors' bills. Defendant's attempt to introduce evidence that he had submitted many other claims to insurance companies with correct medical billings was rejected by the trial court as irrelevant. The Seventh Circuit reversed and ordered a new trial, finding the offered evidence relevant to rebut the government's proof of a scheme with intent to defraud. *Id.* at 654.

We find *Shavin* distinguishable from the case before us. Unlike the legitimate insurance claims offered by the defendant in *Shavin,* there was no indication here whether the bounced check and bank record offered were evidence of legitimate or illegitimate transactions between appellant and the Robertsons, nothing in the offer of proof to indicate whether the transactions were or were not part of a fraudulent scheme. In short, they were irrelevant as offered to the charges against appellant.

## C. Overheard conversation

The government produced evidence that appellant had misrepresented to client Catherine Sawyer that a premium payment she made would cover the policy for her lifetime and that she purchased the policy in reliance on that misrepresentation. Appellant attempted to introduce into evidence the testimony of his former secretary that she had overheard a conversation between appellant and Mrs. Sawyer in which they discussed a five year and a seven year prepayment of premiums. The testimony was offered as a prior inconsistent statement of a witness, for purposes of impeachment. The court refused to accept the testimony because it failed to meet the requirement of Rule 613(b)(2) that a witness be given "an opportunity to explain or deny" extrinsic evidence of a prior inconsistent statement.

■ Appellant argues that the "event" of the phone conversation did not constitute a prior inconsistent statement by Mrs. Sawyer, that the testimony was not hearsay because it was offered not for the truth of anything overheard but to show that the conversation took place, and that the occurrence of the phone conversation was relevant to rebut the government's evidence that appellant had misrepresented the payment as a lifetime premium. We agree that the testimony was thus admissible. But no such offer of proof was made at trial. Counsel offered the testimony only "in terms of impeachment". Our standard of review is therefore plain error. Rule 103 Fed.R.Evid.

■ We find that proof that Mrs. Sawyer purchased the insurance policy in question under false pretenses was in no way essential to the sufficiency of evidence in any of the counts against appellant. Both counts involving Mrs. Sawyer revolved around appellant's fraudulent conversion of a refund check from a wholly different policy. Any error in excluding the offered testimony does not, therefore, satisfy the plain error standard.

## III. Sufficiency of Evidence

Appellant contends finally that the court erred when it denied his motion for judgment of acquittal at the close of the government's case. "In assessing the correctness of such a denial, we must, of course, view the evidence considered as a whole, including all inferences that may be reasonably drawn therefrom, in the light most favorable to the government." *United States v. Fortes,* 619 F.2d 108, 122 (1st Cir.1980). In such light, we find that there was sufficient evidence upon which a reasonable person could find guilt beyond a reasonable doubt. *See id.; United States v. Indelicato,* 611 F.2d 376, 384 (1st Cir.1979).

Section 1341 of title 18 U.S.C., under which appellant was convicted, provides in applicable part:

"Whoever, having devised or intending to devise any scheme or artifice to defraud, ... for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail according to the direction thereon ... any such matter or thing, shall be fined not more than $1,000 or imprisoned not more than five years, or both."

Appellant argues that in the case of three separate counts there was insufficient evidence upon which to conclude that he caused mailings in furtherance of a fraudulent scheme.

In two instances the mailings involved were refund checks, payable to clients and mailed to appellant's agency office, which appellant converted to his own use. He contends that he had no way of knowing that such mailed refunds would issue and thus could not have caused them in furtherance of a scheme to defraud; in effect, that he committed simple theft but not mail fraud.

■ We note first that it is sufficient under the statute if the accused has "take[n] or receive[d]" any matter from the

mail in furtherance of a fraudulent scheme. In addition, a person has caused the mail to be used within the meaning of the statute when he "does an act with knowledge that the use of the mails will follow in the ordinary course of business, or where such use can reasonably be foreseen, even though not actually intended . . . ." *Pereira v. United States,* 347 U.S. 1, 8–9, 74 S.Ct. 358, 362–363, 98 L.Ed. 435 (1954). We find ample evidence in the record upon which to conclude that appellant perpetrated an ongoing insurance fraud scheme which relied in part on his positioning himself between insurance purchasers and insurance companies and his thus being able to intercept and alter mailed communications between them. The mailing of refund checks to the agency was reasonably foreseeable, and their interception and conversion was closely enough related to appellant's ongoing fraudulent scheme to bring his conduct within the statute. *See United States v. Maze,* 414 U.S. 395, 399, 94 S.Ct. 645, 648, 38 L.Ed.2d 603 (1974).

■ Other counts upon which appellant was convicted were supported by mailings of falsified insurance applications and the return mailing of insurance policies to policyholders or to appellant's agency. Appellant argues that such mailings were too remotely related to any fraudulent scheme to be considered in furtherance thereof. But the receipt of policies from the company was necessary to maintain an appearance of business regularity through which appellant could avoid detection and continue to collect commissions on the fraudulently sold policies. *See United States v. Sampson,* 371 U.S. 75, 80–81, 83 S.Ct. 173, 175–176, 9 L.Ed.2d 136 (1962). Furthermore, because he was often an intermediary in the transmission of applications and policies between policyholders and the insurance company, those transmissions helped him to foster a continuing relationship with those policyholders, many of whom were the targets of repeated fraudulent sales. We have no difficulty finding that reasonable jurors could conclude that such mailings were an integral part of appellant's ongoing scheme to defraud.

■ Another count against appellant was based on a letter that he wrote to an insurance company denying his conversion of a refund check. Appellant argues that the letter was not sufficiently in furtherance of a scheme to defraud because it occurred after the scheme to defraud had terminated.

It is true that mailings subsequent to a scheme that has "reached fruition", though in some sense brought about by that scheme, will not support a conviction for mail fraud. *Kann v. United States,* 323 U.S. 88, 94, 65 S.Ct. 148, 150, 89 L.Ed. 88 (1944). But that does not mean that "a deliberate, planned use of the mails after the victims' money [has] been obtained can never be 'for the purpose of executing'" a fraudulent scheme. *Sampson, supra,* 371 U.S. at 80, 83 S.Ct. at 176. Here, appellant's letter was a deliberate attempt to lull detection of an ongoing insurance fraud scheme, a scheme which depended upon an ongoing agency relationship with insurance companies. Or so a jury could reasonably find on the record before us.

■ Appellant contends finally that the evidence was insufficient as a matter of law to find that he deceived Anthony Micalizzi into believing that he was purchasing a retirement or annuity policy when he was in fact purchasing life insurance. That alleged deception was the basis of one count against appellant. Appellant's contention of error rests on Mr. Micalizzi's statement at trial that he "figured [the policy] might be in the way of a life policy, too; once it was paid . . . ." But having reviewed Mr. Micalizzi's testimony as a whole in the context of the entire record, we find that there was ample evidence upon which the jury could conclude that Mr. Micalizzi had indeed been defrauded.

*The judgment below is affirmed.*