October 21, 1991

**IN THE SUPREME COURT OF THE
COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS**

| | | |
|---|---|---|
| COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS, | ) ) | APPEAL NO. 90-059 CRIMINAL CASE NO. 90-84 |
| Plaintiff/Appellee, | ) ) ) | |
| vs. | ) ) | OPINION |
| ROBERT N. KAIPAT, | ) ) | |
| Defendant/Appellant. | ) ) ) | |

Argued and Submitted June 26, 1991

Counsel for Defendant/Appellant:   James H. Grizzard
                                                      Caller Box PPP, Suite 374
                                                      Saipan, MP  96950

Counsel for Plaintiff/Appellee:     Robert P. Kingsley
                                                      Assistant Attorney General
                                                      Office of the Attorney
                                                            General
                                                      Capitol Hill
                                                      Saipan, MP  96950

BEFORE:   DELA CRUZ, Chief Justice, VILLAGOMEZ and BORJA, Justices.

DELA CRUZ, Chief Justice:

Robert N. Kaipat, a police officer, appeals his conviction for assault and battery, rioting, obstruction of justice, and misconduct in public office.[1]  All are misdemeanor offenses.

---

[1] A felony charge of aggravated assault and battery was dismissed on motion of the government prior to trial.

## I.

On the evening of April 21, 1990, Leandro Bergonia was arrested, charged with sexual abuse of a child and placed in detention in the Department of Public Safety (DPS) detention facility in Susupe, Saipan. The child's father, Juan Cepeda, was also arrested, charged with assaulting Bergonia and placed in another cell in the facility.

At the time, other inmates were detained within the facilities' six detention cells. The cells open onto a corridor. There are three cells on one side of the corridor (numbered 1-3) and three on the other (numbered 4-6). Inmates can view their fellow inmates in cells across the corridor and can hear inmates throughout the facility.

After initially being incarcerated in cell 1, Bergonia was taken across the corridor to cell 4, where he remained.

At approximately 8:00 a.m. the following day, April 22, 1990, Kaipat arrived at the facility to assume a shift overseeing the inmates.

There was some dispute at trial concerning the ensuing events.

Witnesses for the government (principally Bergonia) testified that Kaipat released inmates Mariano Camacho and William Sablan from cell 6, admitted them to Bergonia's cell, and directed them to assault Bergonia. Inmate Robby Sasao testified that Kaipat also assaulted Bergonia, punching and kicking him in the stomach.[2]

---

[2]Sasao was incarcerated in cell 1, which faces cell 4 across the corridor, and was thus presumably able to observe the events.

Witnesses testified that Bergonia yelled and screamed during the assault.

That afternoon, Kaipat escorted Bergonia to the Commonwealth Health Center for treatment for his injuries. Bergonia told an emergency room nurse that he had been beaten in jail and threatened by a police officer. Bergonia testified that Kaipat visited him in his hospital room, asked him why he had told the truth, and threatened to kill him if he told what happened.

The physician who examined Bergonia, Dr. Gerald Koman, testified that Bergonia suffered broken ribs on the back of his left chest, beneath the armpit. Dr. Koman was of the opinion that the location of the injuries did not support Kaipat's assertion that they had occurred when Bergonia was struck by a cinder block thrown by Cepeda after it crashed through the windshield of Bergonia's vehicle prior to his arrest.

At trial, the prosecution called another inmate, Leonardo Datu, to testify. Datu had earlier made a statement to DPS Captain Ramon Camacho corroborating the account of the assault described above. On the witness stand, however, he claimed that he had been asleep at the time of the incident and knew nothing of the assault. He also said that he was unable to recall the statement he had made to Captain Camacho. Over the defense's objection, the court admitted Datu's out-of-court statement as a prior inconsistent statement which could be used to impeach his credibility.

Kaipat was convicted on August 23, 1990, and sentenced to one year in detention on November 13, 1990.

## II.

The first issue presented for our review is whether the trial court erred in admitting Datu's out-of-court statement as a prior inconsistent statement. In reviewing the propriety of the admission or exclusion of evidence, we apply the abuse of discretion standard. In re Estate of Mueilemar, No. 90-020 (N.M.I. Nov. 29, 1990).[3]

The second issue is whether there is sufficient evidence to sustain the conviction for the offenses of assault and battery, riot, and obstruction of justice. On a challenge to the sufficiency of the evidence, "[t]he appellate court must consider evidence in a light most favorable to the government and determine whether any reasonable trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Commonwealth v. Delos Santos, 3 CR 661, 674 (D.N.M.I. App. Div. 1989) citing Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

The third issue is whether a police officer is a "public official" within the meaning of 6 CMC § 3202, prohibiting misconduct in public office. "Where the trial court's decision is based on construction of a statute, the question on appeal is whether the trial court correctly interpreted and applied the statute at issue, and this is a question of law reviewed under the

---

[3]See also Commonwealth v. Mendiola, No. 90-027 (N.M.I. Jan. 28, 1991) (amended opinion) (in appeal of murder conviction, issue of whether trial court abused its discretion in admitting bloody and foul-smelling clothes of victims into evidence was subject to review under abuse of discretion standard).

327

de novo standard." <u>Attorney General v. Cubol</u>, 3 CR 64, 70 (D.N.M.I. App. Div. 1987) (citation omitted).

## III.

## The Prior Inconsistent Statement

According to Com.R.Evid. 607, "[t]he credibility of a witness may be attacked by any party, including the party calling him." Where a witness claims nonrecollection which is deemed false or unbelievable, a court has the discretion to admit a prior inconsistent statement. <u>United States v. Insana</u>, 423 F.2d 1165, 1170 (2nd Cir. 1970), <u>cert. den.</u> 400 U.S. 841, 91 S.Ct. 83, 27 L.Ed.2d 26 (1970).

Under the circumstances--after Datu testified that he had been asleep during the assault and claimed inability to remember his conversation with Captain Camacho[4]--the trial court did not abuse its discretion in permitting the government to introduce Datu's prior inconsistent statement to impeach his credibility. Com.R.Evid. 613(b).[5] See <u>United States v. Martin</u>, 694 F.2d 885, 888 (1st Cir. 1982) (citing Fed.R.Evid. 613(b); prior inconsistent

---

[4]We note that the trial court found that Datu was "evasive throughout direct examination" and that he "virtually denied that the incident in question actually occurred as he had told [Captain Camacho]." Transcript of Proceedings at 239, 240. The court later remarked upon the hesitancy of many of the inmates to testify candidly--presumably in fear of reprisal. <u>Id</u>. at 413.

[5]This rule provides, in pertinent part: "[e]xtrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate the witness thereon, or the interests of justice otherwise require."

statement "admitted not for the truth of the matter asserted in the prior statement but to impeach the credibility of the witness").

## The Sufficiency of the Evidence

Reviewing the evidence supporting the convictions for assault and battery, riot, and obstruction of justice in the light most favorable to the government, we find that any rational trier of fact could have found the essential elements of each of the offenses beyond a reasonable doubt. Delos Santos, supra.

This case was not tried to a jury. In reviewing a non-jury criminal conviction, where the evidence consists largely of oral testimony contradictory in nature due regard should be given to the opportunity of the trial court to judge the credibility of the witnesses. United States v. Delerme, 457 F.2d 156, 160 (3rd Cir. 1972).

6 CMC § 1202(a) provides, in pertinent part, "[a] person commits the offense of assault and battery if the person unlawfully strikes, beats, wounds, or otherwise does bodily harm to another . . . ." There is sufficient evidence to support a finding that Kaipat punched and kicked Bergonia. Kaipat's conviction for assault and battery shall stand.

According to 6 CMC § 3102(a): "[a] person commits the offense of rioting if he or she assembles with two or more other persons and together with the latter, by force, violence, loud noise, shouting or threats, places others in fear or danger." The evidence indicates that Kaipat assembled with Sablan and Camacho, released the inmates from their cell, took them to Bergonia's cell

329

and, by force and violence, placed Bergonia in fear and danger. There is sufficient evidence to support a conviction for riot. Kaipat's conviction on that count shall stand.

Closer analysis is necessary in our review of Kaipat's conviction for obstruction of justice.

■ 6 CMC § 3302 provides, in pertinent part, that a person who "unlawfully tampers with witnesses or payment [sic] or attempts to prevent their attendance at trials is guilty of obstructing justice . . . ." Kaipat was convicted under this statute for attempting to influence Bergonia's testimony.[6] Though Kaipat has not raised the point, we note that part of the statute is somewhat confusing. We deem it necessary to sua sponte determine whether 6 CMC § 3302 provides sufficient notice of unlawful conduct.[7]

■ The statute, which was carried over from the Trust Territory Code,[8] contains an error that is apparently accountable to a

_____

[6]A charge that Kaipat attempted to prevent Bergonia's attendance at trial was not proven and is not at issue.

[7]See, e.g., State v. Kameenui, 753 P.2d 1250, 1251 (Haw. 1988):

> Due process of law requires that a penal statute or ordinance state with reasonable clarity the act it proscribes and provide fixed standards for adjudging guilt, or it is void for vagueness. Statutes must give [a] person of ordinary intelligence a reasonable opportunity to know what conduct is prohibited so that he or she may choose between lawful and unlawful conduct.

(Citations omitted).

[8]Pursuant to NMI Const. Schedule on Transitional Matters § 2, which provides: "[l]aws in force in the Northern Mariana Islands on the day preceding the effective date of the Constitution that are consistent with the Constitution and Covenant shall continue in force until they expire or are amended or repealed." CMC at B-343.

mistake in codification. As enacted, the statute read "unlawfully tampers with witnesses or prevents or attempts to prevent their attendance at trials . . . ." TTC (1966 ed.) § 418 (emphasis added). In the 1970 edition of the Trust Territory Code, "or payment" appeared in place of "or prevents." 6 CMC § 3302 incorporates the error.

Nonetheless, in 6 CMC § 3302 we note that the clause "or payment" is independent of the preceding clause, "tampers with a witness." Standing alone, "tampers with a witness" constitutes an offense for obstruction of justice. This language is unambiguous and gives sufficient notice of the prohibited conduct.

We also deem it necessary to sua sponte address a second question--whether Bergonia was a "witness" within the meaning of 6 CMC § 3302.

Because of the absence of a statutory definition, we apply the common meaning of witness:[9] "[i]n general, one who, being present, personally sees or perceives a thing . . . ." Black's Law Dictionary "Witness," 1603 (6th ed. 1990). A witness is also a person called to testify before a court. Id.

Bergonia, who had first-hand knowledge of the incident and was called to testify, was a witness within the meaning of 6 CMC § 3302.

There is sufficient evidence to support the conclusion that

_____

[9]See Commonwealth Ports Authority v. Hakubotan Saipan Ent., Inc. (N.M.I. Aug. 8, 1991) (in absence of indication that legislature intended term to have technical legal meaning, it is assumed that legislative purpose is expressed by ordinary meaning of word used).

Kaipat's threat to Bergonia--that he would kill him if he told the truth as to what had occurred--was an attempt to influence Bergonia's testimony, and constituted obstruction of justice. The conviction on that count is sustained.

## "Public Official" under 6 CMC § 3202

The final issue we review relates to the definition of "public official" in 6 CMC § 3202, which provides, in pertinent part, "[e]very person who, being a public official, does any illegal act under the color of office . . . is guilty of misconduct in public office . . . ." Kaipat contends that a police officer is not a "public official" under the statute. He asks us to reconsider and overturn the rule of Commonwealth v. Pangelinan, 3 CR 839 (D.N.M.I. App. Div. 1989), which held that police officers are public officials within the meaning of 6 CMC § 3302.

In Pangelinan, the defendant advanced the same argument that Kaipat now makes--that the term "public official" should apply only to persons elected to office or appointed to their position. The Pangelinan court rejected this contention:

> Though to some, the position of police officer is a job like any other, most would agree that it is a special type of employment. A police officer is entrusted with the safety and welfare of the citizenry. 1 CMC § 2504. The Constitution requires that a police officer take an oath to support the laws and constitutions of the Commonwealth and the United States. C.N.M.I. Const. Art. XVII, § 1. We hold that all these considerations together support the finding that a police officer is a public official.

3 CR at 851. We affirm this ruling.

Aside from considerations noted in <u>Pangelinan</u>, we note that police officers share in and exercise the power of the sovereign. An officer is called upon to use good judgment and sound discretion in determining whether an offense has been committed, and has the unique authority to arrest persons for violating the law. These facts reinforce the conclusion that police officers are "public officials" under 6 CMC § 3202.

Accordingly, Kaipat's commission of the offences of assault and battery, riot, and obstruction of justice constituted misconduct in public office. His conviction on that count shall stand.

## IV.

Based on the foregoing analysis, the trial court judgment is AFFIRMED.

Entered this 21st day of October, 1991.

_____
JOSE S. DELA CRUZ, Chief Justice

_____
RAMON G. VILLAGOMEZ, Associate Justice

_____
JESUS C. BORJA, Associate Justice

333